Patrick James **JEFFRIES**,
Petitioner–Appellant,

v.

James **BLODGETT**, Superintendent,
Respondent–Appellee.

No. 91–36017.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1992.

Filed Sept. 9, 1992.

Withdrawn March 3, 1993.

Filed March 3, 1993.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 21, 1993.

---

Stephanie Ross, Bellingham, WA, Brian R. Phillips, Everett, WA, for petitioner-appellant.

Paul D. Weisser, Asst. Atty. Gen., Olympia, WA, for respondent-appellee.

Before: GOODWIN, FARRIS and FERNANDEZ, Circuit Judges.

## ORDER

The *opinion and dissent filed March 3, 1993, slip op.* 1841 and appearing at 988 F.2d 923 (9th Cir.1993) are amended as follows:

With the opinion and dissent thus amended, Judges Goodwin and Farris have voted to deny the petition for rehearing. Judge Farris has voted to reject the suggestion for rehearing en banc, and Judge Goodwin so recommends. Judge Fernandez would grant the petition for rehearing, and has voted to accept the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed.R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

GOODWIN, Circuit Judge:

Patrick James Jeffries appeals the judgment which denied his petition for a writ of habeas corpus. He was convicted in the State of Washington and sentenced to death on two counts of aggravated first-degree murder. The district judge carefully considered the 18 alleged constitutional violations asserted in the petition and explained, in detail, why none required federal intervention. *Jeffries v. Blodgett,* 771 F.Supp. 1520 (W.D.Wash.1991). We agree with the district court's resolution of all of the issues except one—the issue of juror misconduct. We therefore vacate and remand.

While there was no eyewitness to the murders, the state produced evidence from which the jury could find that Jeffries killed Phillip Skiff by firing seven .22 calibre bullets into his body, and killed Inez Skiff by firing ten .22 calibre bullets into her body. He then buried his victims in shallow graves on their property and told inquiring neighbors various false stories about their whereabouts. Either before or after the murders, Jeffries helped himself to the currency, gold, weapons and other personal property of the victims. He headed for Canada, leaving a trail of stolen property and witnesses who saw him selling or attempting to sell items stolen from the Skiffs. He was also seen flashing large quantities of Canadian money shortly after the Skiffs had been murdered. The late Mrs. Skiff had recently withdrawn $30,-000 in Canadian currency from her bank in

Canada. That money was never found or accounted for.

On November 5, 1983, the Clallam County Superior Court jury convicted Jeffries of two counts of aggravated murder. In a special verdict, the jury also found that two aggravating factors had been proven: (1) that the murders were committed to conceal the commission of a crime or to protect or conceal the identity of a person committing a crime, and (2) that the murders were committed as part of a common scheme or plan. Finding insufficient mitigating circumstances to warrant leniency, the jury sentenced Jeffries to death.

The Washington Supreme Court affirmed Jeffries' conviction and sentence on direct appeal. *State v. Jeffries,* 105 Wash.2d 398, 717 P.2d 722 (*Jeffries I*), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 301 (1986). Jeffries filed three personal restraint petitions in state court, all of which the Washington Supreme Court denied. *In re Jeffries,* 722 P.2d 99 (1986) (*Jeffries II*); *In re Jeffries,* 110 Wash.2d 326, 752 P.2d 1338, cert. denied, 488 U.S. 948, 109 S.Ct. 379, 102 L.Ed.2d 368 (1988) (*Jeffries III*); *In re Jeffries,* 114 Wash.2d 485, 789 P.2d 731 (1990) (*Jeffries IV*).

Jeffries then filed this habeas corpus petition in federal district court. The district court denied Jeffries' petition. Jeffries now appeals that denial.

■ We review de novo the district court's denial of habeas relief. *Dickson v. Sullivan,* 849 F.2d 403, 405 (9th Cir.1988). However, findings of fact by the state court are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Hamilton v. Vasquez,* 882 F.2d 1469, 1470–71 (9th Cir.1989), and are reviewed for clear error. *Norris v. Risley,* 878 F.2d 1178, 1180 (9th Cir.1989).

In his habeas petition, Jeffries raises a number of constitutional issues covering every phase of his journey to this court. With regard to the district court, Jeffries argues that the court erred in failing to grant him an evidentiary hearing on newly discovered evidence and in refusing to allow him to present certain expert testimony. Concerning the Washington State Supreme Court, Jeffries argues that it was error for that court to make use of an improper report prepared by the trial judge. Concerning his state trial, Jeffries raises a number of issues covering: (1) the form of indictment; (2) fair trial; (3) evidentiary decisions of the trial judge; (4) aggravating circumstances; (5) mitigating circumstances; and (6) ineffective assistance of counsel.

## I. *Evidentiary Hearing*

■ Jeffries argues that the district court erred in refusing to hold an evidentiary hearing concerning "newly discovered" evidence. The evidence concerns testimony of a travel agent who worked in the same town in which the victims had lived. According to her proposed testimony, three sinister-looking people driving a car with California plates entered her travel agency on the day of the murders and asked for directions to Barr Road or to the Barr Road Extension. The victims had lived on Barr Road.

The district court initially granted Jeffries' motion to hold an evidentiary hearing concerning this evidence. However, due to illness, the travel agent did not attend the scheduled hearing. Instead, her deposition was taken and the district court considered the information it contained in denying Jeffries' motion for a new trial.

■ A federal evidentiary hearing is mandatory if (1) petitioner's allegations, if proven, would establish the right to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts. *Van Pilon v. Reed,* 799 F.2d 1332, 1338 (9th Cir.1986). Jeffries can meet neither burden.

■ First, even if the travel agent's statement is true, Jeffries would not be entitled to relief. The mere existence of newly discovered evidence relevant to guilt is not grounds for federal habeas relief—more is needed. *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *Gordon v. Duran,* 895 F.2d 610, 614 (9th Cir.1990). Jeffries must show that the newly discovered evidence would probably have re-

sulted in his acquittal. *Gordon*, 895 F.2d at 614–15; *Quigg v. Crist*, 616 F.2d 1107, 1112 (9th Cir.), *cert. denied*, 449 U.S. 922, 101 S.Ct. 323, 66 L.Ed.2d 150 (1980). Evidence which suggests only that some other individual *might* have committed the crime rather than showing that the defendant did not commit the crime is insufficient to meet the "probability of acquittal" standard. *Quigg*, 616 F.2d at 1112. Jeffries' proffered evidence shows only that other persons were in the vicinity of the scene of the crime, not that they had any connection with the crime.

Second, Jeffries has already received a full and fair hearing in state court concerning this evidence. *See Jeffries IV*, 789 P.2d at 737.

## II. *Expert Testimony*

■ Before the district court, Jeffries attempted to call to the stand psychologists who were to testify that reasonable jurors would have interpreted the jury instructions and special verdict form in an unconstitutional manner. Jeffries argues that, in refusing to allow him to introduce such expert testimony, the court committed error. We find no error. *See McDougall v. Dixon,* 921 F.2d 518, 532–33 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991).

## III. *Trial Judge Report*

■ Jeffries argues that his constitutional right to due process was violated because the state trial judge prepared a trial report for use by the State Supreme Court in its proportionality review without giving Jeffries the opportunity to be heard. Jeffries' argument fails for two reasons.

First, the trial judge twice asked trial counsel for Jeffries to contribute toward preparation of the report but counsel failed to do so.

Second, because the trial judge report is used primarily for proportionality review, not for determining guilt or the sentence, and because Jeffries does not make a proportionality claim, he has suffered no prejudice by the use of the report. Even if the State Supreme Court uses this report to evaluate

the evidence justifying the guilty verdict or to support the imposition of the death penalty, the entire trial record is available to fill in gaps that may exist in the report.

## IV. *Prosecution by Indictment*

■ Jeffries argues that Washington's failure to prosecute this capital case by indictment violated his constitutional rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments. Indictment by grand jury is not part of the due process guarantees of the Fourteenth Amendment that apply to state criminal defendants. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), *recently affirmed by Rose v. Mitchell*, 443 U.S. 545, 557 n. 7, 99 S.Ct. 2993, 3001 n. 7, 61 L.Ed.2d 739 (1979). This rule has been applied to Washington's state practice of prosecution by information. *Gaines v. Washington*, 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793 (1928). Accordingly, Jeffries' argument fails.

## V. *Fair Trial*

Jeffries argues that his right to a fair trial was violated due to: (1) prejudicial media publicity; (2) juror misconduct; and (3) prosecutorial misconduct.

### A. *Prejudicial Publicity*

Jeffries argues that he was denied a fair trial because the media publicity surrounding the trial prejudiced the jurors against him. He argues that the trial judge erred in failing to change the venue of the case.

The murders in this case occurred in Clallam County, Washington, population 50,000 (36,250 of whom were eligible for juror duty; 16,400 households). The *Port Angeles Daily News*, a county newspaper with a circulation of about 13,000, provided primary coverage of the murders.

The murders were discovered on April 2, 1983. The *Daily News* ran nine stories on the murders between April 4 and April 19, as well as three more stories in the first two weeks of May. Both the *Seattle Post–Intelligencer* and the *Seattle Times* ran single articles regarding the murders shortly after their discovery. KOMO Television reported

on the murder story for eight of the days between April 4 and 15. KING Television carried stories on April 4, 5, and 15.

The news coverage included: (1) details of Jeffries' Canadian criminal history; (2) the sheriff's statement that Jeffries was armed and dangerous and that the murders were premeditated; (3) details about the nature of the murders; (4) details of Jeffries' arrest; and (5) other details concerning the progress of the investigation.

Jury voir dire was conducted between October 3 and October 19.

 On habeas review, this court must "make an independent review of the record to determine whether there was such a degree of prejudice against the petitioner that a fair trial was impossible." *Bashor v. Risley,* 730 F.2d 1228, 1234 (9th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). This court must independently examine the news reports for volume, content, and timing to determine if they were prejudicial. *Harris v. Pulley,* 885 F.2d 1354, 1360 (9th Cir.1988). Whether a jury was biased is a question of fact. The trial judge's finding on this question is entitled to a presumption of correctness. *Lincoln v. Sunn,* 807 F.2d 805, 814–15 (9th Cir.1987).

 Defendants enjoy the right of due process to be tried by "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). If prejudicial pretrial publicity makes it impossible to seat an impartial jury, then the trial judge must grant the defendant's motion for a change of venue. *Harris,* 885 F.2d at 1361. The prejudice requirement will be satisfied by a finding of: (1) presumed prejudice; or (2) actual prejudice.

### 1. *Presumed Prejudice*

 "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Harris,* 885 F.2d at 1361. Courts rarely find presumed prejudice because "saturation" defines conditions found only in extreme situations. *Id.*

 We cannot presume prejudice in this case. We agree with the trial judge and the district court that the nature of the news coverage was factual, and not inflammatory. Moreover, although there was a substantial amount of publicity, the bulk of it occurred six months before jury selection in the case.

### 2. *Actual Prejudice*

 Actual prejudice exists if the jurors demonstrated actual partiality or hostility that cannot be laid aside. *Harris,* 885 F.2d at 1363. "[J]urors need not, however, be totally ignorant of the facts and issues involved." *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

 We find no actual prejudice in this case. First, it is immaterial that almost all of the jurors had heard or read about the case prior to trial. All of these jurors swore under oath that they could impartially judge Jeffries' guilt or innocence.

Moreover, of the 180 venire members, at most 14 were excused, either for cause or peremptorily, because of potential prejudice. Excusing 14 out of 180 venire members for prejudice does not indicate actual prejudice of jurors. *See Murphy,* 421 U.S. at 803, 95 S.Ct. at 2037–38 (no prejudice found where 20 out of 78 venire members excused due to partiality). Jeffries points to no aspect of the five volume voir dire transcript in arguing that actual prejudice existed.

### B. *Juror Misconduct*

Jeffries argues that he was denied a fair trial because one of the jurors in the case informed the other jurors that Jeffries was a convicted armed robber. The trial judge had excluded evidence of Jeffries' prior convictions during the guilt and penalty phases of the trial.

Two years after Jeffries was sentenced, two jurors filed affidavits concerning juror conduct during the trial. In his affidavit, juror Thomas Tyszko stated that, during the guilt phase, juror Erin Thomas announced to the jury that "Jeffries is a convicted armed robber ... oh we're not supposed to know

that are we?" Tyszko stated that he had ignored the comment.

In her affidavit, juror Kathleen Sims claimed that, during the penalty phase, Thomas told the jury that Jeffries "had a record." Sims stated that someone, perhaps herself, responded that Jeffries' criminal record was irrelevant.

Thomas denied making the statements or even that he had heard Jeffries had a record. Eight of the twelve jurors swore that they did not hear anyone refer to Jeffries' criminal record or make such statements themselves.

In assessing whether the alleged juror misconduct deprived Jeffries of a fair trial, the district court properly invoked the five-part test set out in *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir.1986). In *Bayramoglu*, we held that the following factors are relevant in determining whether the alleged introduction of extrinsic evidence constitutes reversible error:

> (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict.

*Id.* While instructive, none of these factors should be considered dispositive. *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir.1988). The ultimate question is "whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Bayramoglu*, 806 F.2d at 887 (internal quotations omitted).[1]

The Supreme Court, however, has recently invoked a less stringent harmless error standard on collateral review. *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). To obtain relief, petitioners must now show that the alleged error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Although petitioners now face a greater burden, it would be wrong to assume that federal collateral review has lost much of its force. It is therefore important in applying the new harmless error standard to abide by the cautionary words of the *Kotteakos* Court:

> The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248.

In determining whether the alleged juror misconduct had a "substantial influence" on the verdict, we turn to *Dickson v. Sullivan*, 849 F.2d 403 (9th Cir.1988), a case which presented facts very similar to ours. There, we granted habeas relief where two jurors were exposed to an out-of-court communication by a deputy sheriff to the effect that Dickson "had done something like this before." In reaching this result, we emphasized the significance of the nature of the extrinsic information received by the jury in evaluating its potential impact on the verdict. *Id.* at 406–07. Here, as in *Dickson*, the extrinsic information was "both directly related to a material issue in the case and highly inflammatory." *Id.* at 407.[2]

---

**1.** An alternative and equivalent articulation of this test is whether there is a "reasonable possibility" that the extraneous material could have affected the verdict. *United States v. Navarro–Garcia*, 926 F.2d 818, 821 (9th Cir.1991).

**2.** The fact that the extrinsic information came from a juror's personal knowledge rather than from an outside source has no bearing on our

analysis. We have previously recognized that a juror's personal knowledge of information concerning the defendant or the defendant's alleged crime constitutes impermissible extrinsic evidence. *United States v. Navarro–Garcia*, 926 F.2d 818, 821 (9th Cir.1991); *see also United States v. Howard*, 506 F.2d 865, 867 (5th Cir. 1975).

Jeffries was convicted and sentenced to death on the basis of two special findings: murder to conceal the commission of the crime of robbery and murder as part of the common scheme or plan to rob. Against this backdrop, we find extrajudicial knowledge of Jeffries' prior conviction for armed robbery to be especially harmful. Where the extrinsic evidence concerns a prior conviction similar to the charge at issue, "there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again." *United States v. Bagley*, 772 F.2d 482, 488 (9th Cir.), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

The potential for prejudice under these circumstances was recognized in *Dickson*, but overlooked by the district court in this case. Moreover, the district court erroneously applied *Bayramoglu* by finding most important "the fact that even those jurors who actually heard the remark have repeatedly stated it was not a factor in reaching their decision." Testimony as to the subjective effects of extraneous information is outside the relevant scope of inquiry of a reviewing court. *United States v. Bagnariol*, 665 F.2d 877 (9th Cir.1981) (Fed.R.Evid. 606(b) bars consideration of evidence concerning the impact of extrinsic information on the deliberative process). "Rather, the trial court's factual inquiry is limited to determining the extent, if at all, to which jurors saw or discussed the extrinsic evidence." *Dickson*, 849 F.2d at 406. The district court should instead have applied an objective test in evaluating the potential impact of the extrinsic evidence on the verdict, keeping in mind the "highly inflammatory" effect that knowledge of substantially similar prior bad acts has upon the jury. *Id.* at 406–07.

In *Dickson*, we found it "impossible" to conclude that exposure of one or more jurors to highly prejudicial information regarding the defendant's prior criminal acts was harmless beyond a reasonable doubt. *Id.* at 408. The serious concerns that motivated us to grant habeas relief in that case are likewise present here and lead us to the same result

even under the *Kotteakos* harmless error standard. Because we conclude that extrinsic information of the nature alleged to have been communicated here, if true, would have had a "substantial and injurious effect or influence" on the verdict, we vacate the grant of summary judgment, and remand for a factual determination as to the truth of the affidavits.

## C. *Prosecutorial Misconduct*

Jeffries argues that a number of statements made by the prosecutor to the jury during closing argument deprived him of a fair trial.

We review remarks by the prosecution in a capital case to determine if they rendered the proceedings fundamentally unfair. Improper argument does not, per se, violate a defendant's constitutional rights. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.1987), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Moreover, we review for plain error prosecutorial comments to which a defendant fails to object. *United States v. Endicott*, 803 F.2d 506, 513 (9th Cir.1986).

### 1. *Comment on Jeffries' Right to Remain Silent*

Washington state law provides a right of allocution to the defendant to make a statement during the closing arguments which is not subject to direct or cross-examination. Wash.State Sup.Ct.Crim.R. 7.1(a)(1). Jeffries exercised this right and indicated that he was not guilty of these murders and refused to beg for mercy for crimes he did not commit. In response, the prosecution said in his closing argument:

> Well, you have heard the defendant in a situation where he does not have to take an oath and in a situation that I can't cross-examine him, and his statement, I submit, is one that is insulting to the intelligence. It is also a statement, I think, full of arrogance.

Defense counsel did not object to this statement and did not offer a curative instruction in response.

 The Fifth Amendment prohibits the prosecutor from commenting to the jury on the defendant's failure to take the stand in his own defense. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). However, such commentary mandates reversal only if: (1) the commentary is extensive; (2) an inference of guilt from silence is stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have supported acquittal. *Lincoln v. Sunn,* 807 F.2d 805, 809 (9th Cir.1987).

 The comment in this case does not create error, much less constitutional error. We agree with the Washington State Supreme Court that the comment constituted, at worst, a rebuttal of Jeffries' contention that he was telling the truth. *See Jeffries I,* 717 P.2d at 722. Moreover, the comment was a single, isolated incident rather than an extensive tactic by the prosecution.

### 2. *Caldwell Claim and Eye for an Eye*

 In his closing argument, the prosecutor said:

> Phil Skiff and Inez Skiff didn't get due process of law. This man got a fair trial. He got two attorneys. He got resources, he got the benefit, everything that our system gives to a defendant, everything, and he got a fair trial and he will get more than that. *He will get appeals,* you name it, because that is our system and this system has treated him fairly. Something that he didn't do—he killed unmercifully, but our system gives him due process of law so don't think that you're killing him because you're giving him the law and you're giving him justice.

Jeffries argues that, in making this statement, the prosecutor impermissibly led the jury to believe that the responsibility for imposing the death sentence did not lie with them. Jeffries relies on *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Moreover, Jeffries ar-

gues that the statement constituted an impermissible "eye for an eye" argument.

Jeffries' arguments are not persuasive. The prosecutor's passing reference to Jeffries' right to appeal did not indicate to the jury that it was relieved of its responsibility for determining the appropriateness of the death penalty. Jurors know that cases can be appealed. Moreover, the penalty phase instruction made clear to the jury that the responsibility lay with it. Finally, the statement does not suggest that the jury ignore its legal responsibility impartially to weigh all of the evidence and to impose a death sentence as a matter of retribution.

### 3. *Prosecutor's Opinion as to Guilt*

 Finally, Jeffries argues that the prosecutor improperly informed the jury of his personal opinion as to Jeffries' guilt. After the jury had returned a guilty verdict in which it found the presence of two aggravating circumstances, the prosecutor told the jury: "Well, ladies and gentlemen, you did the right thing. You did the right thing...." Because the prosecutor made his statement after the jury returned its verdict, the statement could not have affected the jury's decision. The statement *did not* render the trial fundamentally unfair. *See United States v. Gwaltney,* 790 F.2d 1378, 1383 (9th Cir.1986) *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).

## VI. *Evidentiary Claims*

Jeffries argues that certain evidentiary errors made by the trial judge warrant reversal.

 Federal habeas will not lie for errors of state law. *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process. *Id.; Butcher v. Marquez,* 758 F.2d 373, 378 (9th Cir.1985).

### A. *Jeffries' Previous Imprisonment*

 Jeffries argues that his trial was rendered fundamentally unfair when a prose-

cution witness referred to Jeffries' prior history of imprisonment in Canada. When asked by the prosecution when he had first heard of Jeffries, the witness responded: "It was when I met Phil and Inez in Chilliwack that he [Jeffries] used to do carving and things like that when he was in jail somewhere in Canada." Finding that the response was inadvertent and had not been intentionally elicited by the prosecutor, the trial judge denied the defense motion for a mistrial. The judge directed the jury to disregard the prosecutor's question and the witness' response.

We do not believe that the above testimony rendered Jeffries' trial fundamentally unfair. First, the statement was inadvertent and not a prosecutorial attempt to elicit otherwise inadmissible evidence. Moreover, the trial court's remedial instruction to the jury cured any possible prejudice caused by the incident.

### B. Weapons Evidence

■■■ Jeffries argues that the admission of evidence related to weapons possession was contrary to a Washington state rule of evidence and violated his due process rights. At trial, the trial judge allowed the prosecution to introduce evidence showing that Jeffries had been seen with certain rifles, bullets, and handguns. Jeffries argues that this evidence constituted, under Washington law, impermissible character evidence and that its introduction rendered his trial fundamentally unfair.

Jeffries' assertions of state law error are not cognizable on federal habeas. *McGuire,* — U.S. at —, 112 S.Ct. at 480. Moreover, Jeffries' arguments do not establish fundamental unfairness. The evidence of which Jeffries complains was related·to the crimes for which he was being prosecuted. According to the Washington State Supreme Court, the .22 caliber rifle and bullets had been stolen from the victims, the pistols could have been the murder weapon or weapons, and the FBI had determined that the bullets could have come from the same boxes of .22 caliber bullets recovered from Jeffries' stash. *Jeffries I,* 717 P.2d at 731. These determinations are fairly supported by the record and thus warrant a presumption of correctness.

### VII. *Aggravating Circumstances*

Jeffries makes a number of arguments related to the two aggravating circumstances which were found to exist in his case. The two aggravating circumstances are:

(7) The defendant committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime.

(8) There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant.

Wash.Rev.Code §§ 10.95.020(7), (8).

Jeffries' aggravating circumstances claims address: (1) the sufficiency of the evidence; (2) the definitions of the circumstances; and (3) juror unanimity.

### A. *Sufficiency of the Evidence*

Jeffries argues that the evidence in the case was insufficient to establish the existence of either aggravating circumstance. He argues that circumstance (7) requires a finding that the defendant contemplated the commission of a crime prior to committing the murders. Because, Jeffries contends, the trial produced no evidence concerning his motives prior to the killings, circumstance (7) could not have been made out. Similarly, with respect to circumstance (8), Jeffries argues that no evidence demonstrated that he had conceived of some plan concerning the murders prior to their commission.

Evidence supporting aggravating circumstances findings is sufficient if " 'viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Lewis v. Jeffers,* 497 U.S. 764, 781, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct.· 2781, 2789, 61 L.Ed.2d 560 (1979)).

■■■■ At bottom, Jeffries is arguing that aggravating circumstances (7) and (8) cannot be proven by the use of circumstantial

evidence. This assertion is incorrect. *See United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). Sufficient circumstantial evidence exists for a rational jury to find beyond a reasonable doubt that Jeffries had killed the Skiffs to facilitate robbing them. Evidence introduced at trial showed, *inter alia*, that: (1) Phil Skiff had been shot twice in the back of the head "gangland style" and five times in the body; (2) after the murders, Jeffries tried to sell the Skiffs' T.V. and some placer gold; (3) Jeffries was seen flashing large amounts of Canadian money after the murders—Inez Skiff had withdrawn $30,000 in Canadian currency shortly before her murder and that money has never been recovered; and (4) shortly after the murders, Jeffries left the victims' home with their truck, chain saw, T.V., guns, and other items.

### B. *Definitions of the Elements*

Jeffries makes two arguments concerning the elements which make up aggravating circumstances (7) and (8). First, Jeffries contends that these circumstances contain the following elements: (1) a particular crime that was being concealed; (2) a particular plan or scheme; and (3) a specific mental state with respect to the circumstances. Jeffries argues that the trial judge erred in failing to instruct the jury as to the particular crime he was concealing, the plan he was acting in accordance with, and the mens rea with which he concealed a crime or hatched the plan.

■■■ The problem with this argument with respect to items (1) and (2) is that these items are not elements of circumstances (7) and (8) as defined by the Washington Supreme Court. The prosecution need prove only those elements of the crime which are included in the definition of the offense. *Patterson v. New York*, 432 U.S. 197, 210–211, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). In *Jeffries I*, the Washington Supreme Court made clear that, with respect to circumstance (7), "[t]he specific crime need not be stated." *Jeffries I*, 717 P.2d at 735. Similarly, the "common scheme or plan" from circumstance (8) is "simplistic" and "needs no

definition." *Id.* Because it is the sole responsibility of the States to define the elements of their criminal offenses, *see, e.g., Martin v. Ohio*, 480 U.S. 228, 232, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987), Jeffries' first argument fails with respect to the definition of "crime" and "plan or scheme."

■■■ Concerning item (3), the mens rea requirement, the Washington Supreme Court has found that "[i]t is impossible for a jury to find both aggravating circumstances without also finding that the defendant intended to commit them." *Jeffries I*, 717 P.2d at 735. This is true with respect to killing in order to conceal a crime and killing as part of a plan or scheme. Both presuppose some purpose on the part of the defendant. Accordingly, no special instruction was necessary to indicate the mens rea requirements of the circumstances as they applied in this case.

■■■ Second, Jeffries seems to argue that the terms "crime" and "plan or scheme" are unconstitutionally vague. According to the Supreme Court, capital sentencing schemes must not contain vague elements. Capital sentencing standards must provide a meaningful basis for distinguishing between those cases in which the death penalty is appropriate and those in which it is not. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Under the teaching of *Godfrey*, the phrases "crime" and "plan or scheme," are not unconstitutionally vague. 446 U.S. at 427–28, 100 S.Ct. at 1764–65.

### C. *Juror Unanimity*

Jeffries makes two arguments that the trial judge erred in failing to give specific unanimity instructions to the jury. First, concerning the guilt phase, Jeffries argues that the judge should have given a specific unanimity instruction as to each element of the aggravating circumstances charged. Because the judge failed to do so, Jeffries contends it is possible that the jurors disagreed as to what crime he was concealing in murdering the Skiffs, or the common plan or scheme under which he was acting.

Jeffries also argues that the trial judge should have given the jury a separate, specif-

ic unanimity instruction for each murder count. In other words, the judge should have told the jury that it must be unanimous as to the sentence of death for each murder. At trial, the judge submitted to the jury only one verdict form for both counts, rather than one for each.

A faulty jury instruction will constitute a violation of due process only where the instruction by itself infects the entire trial to such an extent that the resulting conviction violates due process. *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Where the alleged error is the failure to give an instruction the burden on the petitioner is "especially heavy." *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977).

With regard to juror unanimity, a general unanimity instruction will normally suffice to instruct the jury that they must be unanimous as to the elements which form the basis of the conviction. *United States v. Payseno,* 782 F.2d 832, 835 (9th Cir.1986). The exception to the general rule involves situations in which "there is a genuine possibility of jury confusion or that conviction may result from different jurors concluding that the defendant committed different acts." *United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983). Juror confusion is often a genuine possibility when the nature of the evidence is complex, when there is a discrepancy between the evidence and the indictment, or some other particular factor creates such a possibility of confusion. *United States v. Frazin,* 780 F.2d 1461, 1468 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986).

Concerning Jeffries' first argument, none of the normal indicia of juror confusion are present. This case involved straightforward facts regarding the murders and did not include complicated legal theories or varied facts regarding different times, places, or personalities. *See Payseno,* 782 F.2d at 837. Moreover, it is irrelevant whether the jurors agreed upon the underlying "crime" or "scheme" as being murder or theft. Under the Washington statute, the specific crime is not an element that needs to be proved beyond a reasonable doubt. *Jeffries I,* 717 P.2d at 735. The findings of a crime or scheme are merely alternative means of finding aggravated first degree murder. *See Schad v. Arizona,* — U.S. —, —, 111 S.Ct. 2491, 2501, 115 L.Ed.2d 555 (1991). Thus, the jury need only unanimously agree that the murder was committed to conceal *some* crime or as part of *some* common scheme or plan. The special verdict form indicates that the jurors were unanimous as to these specifics of the crime.

Jeffries' second argument, concerning juror unanimity at the sentencing phase, is also without merit. As the Washington Supreme Court noted in *Jeffries I,* "[i]n a capital case, the jury is to consider not each count separately but all crimes the defendant has been convicted of in deciding whether death is the appropriate punishment." *Id.* at 735. Jurors in Washington are not required to be unanimous as to the appropriateness of the death penalty for each murder in a multiple-murder trial. They need only be unanimous that the penalty is appropriate because of all of the defendant's crimes. The jury was unanimous on every material question.

### VIII. *Mitigating Circumstances*

Jeffries argues that a number of sentencing phase jury instructions prevented the jury from properly considering mitigating evidence. Jeffries also argues that the jury should have been required to specify the mitigating factors it found in his case and the weights which the jury assigned to them.

A faulty jury instruction will require the grant of a habeas petition only if the instruction by itself so infected the entire trial that the resulting conviction violates due process. *McGuire,* — U.S. at —, 112 S.Ct. at 482. The instruction " 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughton,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). An ambiguous instruction is reviewed to determine whether there is a reasonable likelihood that the jury has applied the challenged in-

struction in a way that prevents the consideration of constitutionally relevant evidence. *Id.; Boyde v. California,* 494 U.S. 370, 381, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).

### A. *Multiple Circumstances and "Having in Mind the Crime"*

Jeffries makes two arguments that a particular jury instruction and verdict form were defective because they hindered the jury from performing its proper function with respect to the determination of mitigating circumstances.

The challenged instruction reads:

Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating *circumstances* to merit leniency?

The verdict form reads:

During the special sentencing proceedings, the State bears the burden of proving beyond a reasonable doubt that there are not sufficient mitigating *circumstances* to merit leniency.

Jeffries first argues that the instruction and verdict form prevented the jury from considering a single mitigating circumstance; that they required the jury to find multiple circumstances or none at all. Second, Jeffries argues that the "having in mind the crime" language prevented the jury from making an individualized determination of the appropriateness of the death penalty.

■■■ A sentencer may not be precluded from considering relevant factors in mitigation of the death penalty. *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978).

■■■ Concerning Jeffries' first argument, the instructions and verdict form to which Jeffries points cannot plausibly be read as precluding the jury from considering a relevant mitigating circumstance should it find only one. This is especially evident given that the jury began it analysis with a presumption of leniency, Wash.Rev.Code § 10.95.060(4), and that the jury was instructed as to the definition of only one mitigating circumstance.

■■■ As for Jeffries' second argument, the instruction cannot be read to prevent individualized analysis when the instruction is read in the context of the other instructions. One instruction told the jury to consider "any relevant factors"—this includes all evidence in mitigation. Another instruction defined a mitigating circumstance as "a fact about the offense, *or about the defendant, . . . .*" Thus, reading the sentencing instructions as a whole, *Boyde,* 494 U.S. at 383, 110 S.Ct. at 1199 (emphasis added), the jury was not precluded from considering any mitigating evidence.

### B. *"Any Relevant Factors"*

■■■ Jeffries argues that a jury instruction permitting the jury to consider "any relevant factors" rather than any "mitigating factors" is ambiguous and thus prevented the jury from making an individualized assessment of the appropriateness of the death penalty. We disagree. The instruction is not ambiguous when read in context. The instructions as a whole, including the definition of a "mitigating circumstance," were adequate to guide the jury. Moreover, it is significant that it was at the request of the defendant that the trial court did not provide the jury with the list of statutory examples of relevant factors. There was no error.

### C. *Failure to Articulate Mitigating Circumstances*

■■■ Jeffries argues that the jury should have been required to specify the mitigating factors and the corresponding weight that it assigned the factors in the sentencing balance. Jeffries cites *Smith v. McCormick,* 914 F.2d 1153, 1166 (9th Cir.1990) for the proposition that the jury must make specific findings as to all relevant mitigating circumstances, including those it finds insufficient to merit leniency. However, in *Smith* there was a specific state statute requiring the sentencing judge to make written findings as to the weight of the mitigation evidence. *Id.* No such state statute operates in Washington. *Clark v. Ricketts,* 942 F.2d 567, 574 n. 5 (9th Cir.1991), *amended on other grounds,* 958 F.2d 851 (1992), *petition for cert. filed,*

May 18, 1992. Therefore, the rationale of *Smith* does not apply to this case.

▮ Furthermore, due process does not require that the sentencer exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant. *Parker v. Dugger*, 498 U.S. 308, 314–19, 111 S.Ct. 731, 736–38, 112 L.Ed.2d 812 (1991); *Clark*, 942 F.2d at 574. Jeffries contends that there is a *Lockett* concern, 438 U.S. at 604, 98 S.Ct. at 2964–65, that the jury may have ignored relevant mitigating evidence. However, it is clear from the record what factors the jury considered in its calculus in Jeffries' case. *See Parker*, 498 U.S. at 314, 111 S.Ct. at 736 (assume trial judge considered all evidence because he said he did); *Clark*, 942 F.2d at 575 (statements of sentencing court that it considered all mitigating evidence satisfy demands of due process clause). The defense offered only one mitigating factor—artistic ability as evidenced by sculptures Jeffries had created. The special sentencing verdict form indicated that the jury found the presence of two specific aggravating circumstances, a murder committed during the commission of a crime and murder as part of a common scheme. The statements of the jury, i.e., the special verdict form and sentence of death, read in light of the record, show that the jury considered all mitigating evidence. This process satisfies the demands of the due process clause.

## IX. *Ineffective Assistance of Counsel*

Finally, Jeffries argues that his counsel's representation of him was unconstitutionally defective. At trial, Jeffries persuaded his attorneys not to present any mitigating evidence. Jeffries first argues that his counsel's acquiescence in his request denied him the effective assistance of counsel. Second, Jeffries maintains that his decision not to present mitigating evidence amounted to a waiver of counsel and that the trial judge did not properly accept this waiver. Finally, Jeffries argues that his counsel failed adequately to investigate evidence in mitigation.

### A. *Counsel's Acquiescence*

▮ Jeffries argues that his counsel's acquiescence in his "unknowing and uninformed" decision not to present any mitigating evidence constituted defective performance. Defense counsel had been prepared to present a mitigation case. However, Jeffries, after a weekend of discussions with his brother and with counsel, decided not to present any witnesses in mitigation. Jeffries repeatedly stated the reasons for his decision:

I still stand that I am innocent and I believe it and I have no reason to even ask God's forgiveness because I have done nothing and I certainly don't see any reason to beg for the jury or anybody else because I am innocent and that is how I stand and therefore I don't want to put my loved ones, like my relatives and friends, bring them up here and put them through this when I believe strongly that there is not valid reason to do so.

Counsel for Jeffries told the court:

Mr. Sowa and myself both believe that our client is perfectly competent and that [it] is his personal decision after a weekend of soul searching, which has caused him to elect this course of actions. While we may not join in it, we believe that the decision is personal enough and made knowingly, voluntarily and intelligently that, as his counsel, we have no choice but to adhere to his wishes.

At sentencing the only mitigation evidence offered was the limited testimony of Jeffries' brother regarding the artistic value of Jeffries' wood sculptures.

To succeed on an ineffective assistance of counsel claim, the petitioner must demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). There exists a strong presumption that defense counsel's actions were reasonable and provided constitutionally adequate assistance. *Id.* at 689, 104 S.Ct. at 2065.

Jeffries' counsel did not render him inadequate assistance. First, Jeffries' decision not to present evidence in mitigation was informed and knowing. His own consistent words and those of his counsel support this conclusion. His unsworn denial of the crimes during his statutory allocution made his refusal to seek mitigation a logical strategy.

 Second, counsel's acquiescence in this decision did not constitute deficient performance. Although the ABA Standards for Criminal Justice (2d ed. 1980) offers some support to Jeffries' contention that his counsel should have presented evidence in mitigation despite his client's wishes to the contrary, the ABA Standards serve only as a "guide" for determining whether an attorney's performance is adequate. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065; *Jones v. Barnes,* 463 U.S. 745, 753 n. 6, 103 S.Ct. 3308, 3313–14 n. 6, 77 L.Ed.2d 987 (1983). As the Supreme Court has recognized, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* Indeed, the Eleventh Circuit has held that "when a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." *Mitchell v. Kemp,* 762 F.2d 886, 889 (11th Cir.1985), *cert. denied,* 483 U.S. 1026, 107 S.Ct. 3248, 97 L.Ed.2d 774 (1987).

In this case, counsel for Jeffries had been prepared to present evidence in mitigation and had discussed with Jeffries the ramifications of failing to present the evidence. Accordingly, counsel did not deprive Jeffries of effective assistance in acquiescing in the latter's considered decision.

### B. *Waiver of the Right to Counsel*

 Also concerning his decision to refrain from presenting evidence in mitigation, Jeffries argues that this decision constituted a waiver of counsel and that the trial court erred in failing to verify that the waiver was knowingly and voluntarily made. Jeffries' argument fails because he did not waive his right to counsel. Jeffries merely participated in the direction of his own defense. *See State v. Jones,* 99 Wash.2d 735, 664 P.2d 1216 (1983). Even if the decision could be construed as a waiver, the facts of this case demonstrate that the waiver was knowingly and voluntarily made.

### C. *Failure to Investigate*

Jeffries argues that his counsel failed to investigate mitigating evidence. This argument is belied by the record. Counsel had been prepared to offer the testimony of several witnesses, including Jeffries' brother, two of his nieces, and his Canadian parole officer to show Jeffries' prior nonviolent character, difficult childhood, drug problems, and social value of his artwork. Counsel performed well in the face of a difficult client and overwhelming evidence in the prosecution's case.

The judgment of the district court is vacated and the cause is remanded to the District Court for further proceedings on the question of juror misconduct in light of *Dickson v. Sullivan, supra.* In all other respects, the findings and conclusions of the district court are free from reversible error.

VACATED and REMANDED.

FERNANDEZ, concurring with and dissenting to opinion:

I concur in the opinion except as to the part regarding jury misconduct. Part V., B. and the concluding paragraph. As to that, I dissent.

The question with which we are presented is a narrow one: if a juror has heard an assertion that a person on trial for murder and robbery was previously convicted of armed robbery, is that juror so tainted that the verdict must be overturned? Our dispute is similarly narrow, but exceedingly important. The majority, relying on *Dickson* and on its own independent reasoning, says that the answer is "yes" and when faced with those two facts sweeps away all other considerations. I say, not necessarily, and that we must still decide whether there *was* an effect

on the verdict under all of the circumstances of this case.

The majority opinion underscores the fears that I have expressed in a dissent to its earlier order granting reconsideration. Slip op. 1841 at 1844–45 (9th Cir. March 3, 1993). If certain comments were merely made by a juror, an almost 10 year old conviction for two vicious murders will be set aside. That, to my mind, is a travesty.