21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony B. JACKSON, Petitioner-Appellant,
v.
John RATELLE, Warden; Attorney General of California,
Respondents-Appellees.
 No. 93-55454.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 8, 1994.*
Decided April 19, 1994.
 
 Before: HUG, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 California state prisoner Anthony B. Jackson appeals pro se the district court's dismissal of his 28 U.S.C. Sec. 2254 petition in which he alleged that he was a denied a fair trial because a juror referred to a dictionary definition of malice. We affirm.
 
 I.
 
 3
 On November 14, 1986, Jackson was convicted in Los Angeles County Superior Court of second degree murder for shooting his wife on January 18, 1986. His defense was that he shot his wife accidentally while trying to unload a rifle.
 
 
 4
 We review de novo the denial of a petition for writ of habeas corpus. Jeffries v. Blodgett, 5 F.3d 1180, 1187 (9th Cir.1993). A state court's factual conclusions are entitled to a presumption of correctness, 28 U.S.C. Sec. 2254(d), and are reviewed for clear error. Id.
 
 
 5
 Jackson's claim involves a juror's use of a dictionary definition of "malice." On March 2, 1990, the state court conducted an evidentiary hearing to determine whether juror Spindler's reference to the dictionary definition and her bringing the definition into the jury room could have affected the verdict. The court found that the dictionary definition "did not play any part in [the jury's] deliberations, and that the jurors followed the court's instructions as given."
 
 
 6
 The transcript of that hearing was not presented to the district court, apparently because the State could not locate its copy. The district court was presented with declarations of two jurors and a defense investigator.
 
 
 7
 The defense investigator, Edward Sanchez, stated in a 1989 declaration that Spindler had told him on May 5, 1989, that after the first day of deliberations, she had copied from her dictionary part of the definition of malice:
 
 
 8
 active ill will, desire to harm another or do some mischief, spite, ill will, evil intent.
 
 
 9
 Jurors Lucille Gay and Derrick Sawyer stated in declarations made in 1987 that they saw juror Spindler use her written definition of malice during jury deliberations and that other jurors had read the definition. Sawyer stated that Spindler's definiton was discussed by other jurors during the deliberations on the question of malice.
 
 At trial, the jury was instructed:
 
 10
 "Malice" may be either express or implied.
 
 
 11
 Malice is express when there is manifested an intention unlawfully to kill a human being.
 
 
 12
 Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life or when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.
 
 
 13
 When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.
 
 
 14
 The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed.
 
 
 15
 "Aforethought" does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act.
 
 
 16
 The State has submitted a copy of the transcript of the state court evidentiary hearing and moves for leave to supplement the record; Jackson does not oppose the motion. In United States v. Chacon, 564 F.2d 1373, 1376 (9th Cir.1977), we obviated the need for remand by considering the contents of a sealed transcript not otherwise part of the record on appeal, where review did not involve any need for taking into account deference to the trial judge's ability to assess demeanor impressions. Similarly, we review the transcript of the state court proceedings in this case.
 
 
 17
 Six jurors, including Gay and Sawyer, and defense investigator Sanchez testified before the state court. Juror Spindler testified that she took the definition from her dictionary at the time when the attorneys began their summations of the case, before the jury was instructed. She noted that the definition was passed around the jurors once. She also stated that the definition of malice contained in the jury instructions "was pretty much the same as what [she] had copied out of the dictionary." She did not discuss the definition with any other jurors and did not overhear anyone discussing the dictionary definition. She testified that she had copied:
 
 
 18
 active ill will; desire to harm another or to do mischief. State of mind of doing something unlawful.
 
 
 19
 She was not certain whether she had included "spite." Over the objection of the defense, Spindler testified that she had believed that she must only follow the instructions that had been given by the court, and that she had done so.
 
 
 20
 Juror Leona Dickerson testified that Spindler had brought a definition of malice into deliberations, that she [Dickerson] had never considered that definition, and that she did not know whether anyone else had read it or discussed it. Jury Foreman David Caswell testified that he did not remember anyone bringing anything in writing into the deliberations. Juror Harold Hoffmeister testified that Betty Spindler had brought in a definition of malice other than that contained in the jury instructions. He did not recall any discussion of her definition of malice, and he testified that he had not considered the definition. Juror Sharon Swart did not remember seeing any dictionary definition.
 
 II.
 
 21
 When extrinsic evidence is presented to a jury that is considering a criminal case, the defendant is entitled to a new trial if the alleged error "had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 113 S.Ct. 1710, 123 L.Ed.2d 353, 373 (1993) (citation omitted); Jeffries, 5 F.3d at 1190. This standard is less stringent than the harmless error standard applied on direct review, as set forth in Chapman v. California, 386 U.S. 18, 24 (1967). Brecht, 123 L.Ed.2d at 370-73; Jeffries, 5 F.3d at 1190.
 
 
 22
 The trial court's factual inquiry is limited to determining the extent to which jurors saw or discussed the extrinsic evidence. Jeffries, 5 F.3d at 1191 (quoting Dickson v. Sullivan, 849 F.2d 403, 406 (9th Cir.1988)). The jurors' testimony about the deliberative process or subjective effects of extraneous information cannot be considered by the trial or appellate courts. Id.; United States v. Bagnariol, 665 F.2d 877, 884-85 (9th Cir.1981); Fed.R.Evid. 606(b). The court must apply an objective test in evaluating the potential impact of the evidence on the jury. Jeffries, 5 F.3d at 1191.
 
 
 23
 Several factors are relevant to determining whether the extrinsic information could have affected the jury: "(1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the extrinsic material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters that may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict." United States v. Navarro-Garcia, 926 F.2d 818, 822-23 (9th Cir.1991) (quoting Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986)).
 
 
 24
 The record shows that the definition was taken in to the deliberations before a verdict was reached and was available for a day or two. Other jurors read the definition. Juror Spindler was told by a group of jurors that they "could only go by what the judge said." The jurors unanimously agreed that they must follow the judge's instructions. The definition was passed among the jurors once. The definition was discussed by other jurors during the deliberations on the question of malice, and juror Spindler referred to her definition of malice at least twice during deliberations. Two jurors did not recall seeing any such definition, and two others did not recall any discussion of the dictionary definition.
 
 
 25
 In Marino v. Vasquez, 812 F.2d 499, 505 (9th Cir.1987), we held that an unauthorized reference to a dictionary definition of malice was reversible error and not harmless because the juror who received the definition had held out against a verdict of guilty of murder for nearly 30 days, but changed his vote to guilty shortly after receiving the definition. The juror using the dictionary definition could have convicted the defendant if he found "ill will" alone, without applying the remaining elements of the legal definition of malice. Id. The holdout juror's change of verdict was evidence of a direct connection between the extrinsic material and the verdict, and the definition of malice was a material aspect of the case. Id. at 505-06.
 
 
 26
 Where no prejudice is shown, however, we have held that use of a dictionary by a jury is error but does not require reversal. United States v. Birges, 723 F.2d 666, 670-71 (9th Cir.1984). Similarly, in Bagnariol, 665 F.2d at 883-88, a case in which the Government had created a fictitious corporation in order to conduct an investigation, we did not reverse when a juror consulted business publications in a public library for a reference to the company. He informed his fellow jurors that he had found no reference and that he found it odd that the appellants had not investigated the company before doing business with it. Id. at 884. The information found by the juror was irrelevant to the guilt or innocence of the appellants, and did not make the appellants' belief in the existence of the company any more or less credible. Id. at 888. The jury was instructed to consider only evidence produced at trial, and that evidence "overwhelmingly substantiated" the guilt of the defendants. Id. at 888-89.
 
 
 27
 The definition of malice is a material aspect of a murder case. Jackson argues that the dictionary definition undercut his defense and affected the jury's consideration of voluntary manslaughter. Jackson's defense was based upon the theory that he had accidentally shot his wife. Either he acted with malice, express or implied, or he acted accidentally. The dictionary definition could not have affected the jury's consideration of Jackson's defense. As in Marino, the dictionary definition differs from the jury instruction. However, there is no evidence of a direct connection between the introduction of the dictionary definition of malice and the jury's verdict. The record does not indicate that the extrinsic evidence had a "substantial and injurious effect or influence in determining the jury's verdict," as required by Brecht, 123 L.Ed.2d at 373 (citation omitted).
 
 
 28
 The decision of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3