James Dean **CLARK**, Petitioner–
Appellant,

v.

James R. **RICKETTS**, et al.,
Respondents–Appellees.

No. 87–2560.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1988.

Opinion Filed Sept. 28, 1989.

Rehearing Granted Feb. 21, 1991.

Reargued and Resubmitted
March 21, 1991.

Opinion Withdrawn Aug. 9, 1991.

Decided Aug. 9, 1991.

As Amended on Denial of Rehearing
and Rehearing En Banc March 9, 1992.

---

Michael R. Urman, DeConcini, McDonald, Brammer, Yetwin, Lacy & Zimmerman, Tucson, Ariz., for petitioner-appellant.

Bruce M. Ferg, Asst. Atty. Gen., Tucson, Ariz., for respondents-appellees.

Before FARRIS, BRUNETTI and THOMPSON, Circuit Judges.

## ORDER

The opinion in this case, decided August 9, 1991 and published at 942 F.2d 567 (9th Cir.1991), is amended by deleting footnote 6 at page 576 and substituting in its place the following footnote 6:

> [6] Clark also argues federal constitutional law requires that aggravating circumstances for sentencing purposes be established beyond a reasonable doubt. It is unnecessary to decide this question, because as we have concluded, the Arizona Supreme Court found that the aggravating circumstances had been established beyond a reasonable doubt.

With the foregoing amendment, the panel as constituted above has unanimously voted to deny the petition for rehearing and to reject the suggestion for a rehearing en banc.

The full court has been advised of the suggestion for an en banc rehearing and a majority of the active judges of the court has voted to reject the suggestion for rehearing en banc. Fed.R.App.P. 35(b).

The petition for rehearing is DENIED, and the suggestion for a rehearing en banc is REJECTED.

## OPINION

DAVID R. THOMPSON, Circuit Judge:

### FACTS

An Arizona jury convicted appellant James Dean Clark of four counts of first-degree murder. One of the four murder victims was fatally stabbed. Another was shot to death. A couple, Mr. and Mrs. Thumm, were shot and killed. The couple's credit cards and rings, a saddle, their car and several guns were stolen. Clark was apprehended, charged with the murders, tried and convicted. Following his convictions, a separate non-jury sentencing hearing was held by the trial judge pursuant to

Ariz.Rev.Stat. 13–902.[1] The sentencing judge found three aggravating factors present in the case:

(1) Clark created a grave risk of death to Mrs. Thumm after he first shot Mr. Thumm in the hallway of their home, Ariz. Rev.Stat. § 13–902(F)(3);

(2) Clark murdered the Thumms with the expectation of receiving some pecuniary gain—credit cards, jewelry and an automobile, Ariz.Rev.Stat. § 13–902(F)(5); and

(3) Clark committed the offenses in an especially cruel and depraved manner, Ariz. Rev.Stat. § 13–902(F)(6).

In mitigation, Clark asserted that he was only twenty years old at the time of the crimes, had a poor home life during his formative years, lacked any adult criminal record, suffered emotional problems stemming from his antisocial personality, and had been cooperative with the police. The sentencing judge found the mitigating factors not sufficiently substantial to warrant leniency and sentenced Clark to death on each of the four counts.

A. Procedural History

Clark filed a direct appeal with the Arizona Supreme Court. That court found that the first aggravating circumstance was not present because Mrs. Thumm was actually in another room at the time Mr. Thumm was killed; therefore, she was not within the "zone of danger" contemplated by section 13–902(F)(3). *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, 895–96, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). The court further determined that none of the murders had been committed in an especially cruel manner because there was no evidence that any of the victims had suffered any pain. *Id.* at 896. The court upheld the trial judge's findings that the murders were committed for pecuniary gain and in a depraved manner. After independently reviewing all the evidence, the court concluded that the aggravating circumstances had been established and that the mitigating circum-

stances were not sufficiently substantial to call for leniency. *Id.* at 897. The court also determined that Clark's sixth amendment right to confront witnesses had not been violated when the prosecution called a John Doe witness to testify against him. *Id.* at 891–93.

After pursuing his state court remedies, Clark filed a petition for a writ of habeas corpus in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 2254. His petition was denied by summary judgment and this appeal followed.

B. Issues on Appeal

We consider four issues on appeal:

1. Whether Clark's sixth amendment right of confrontation was violated when the state trial court precluded him from eliciting, during cross-examination, the name and address of a government John Doe witness.

2. Whether Clark should have been permitted to return to state court to pursue unexhausted fifth and sixth amendment claims stemming from a probation officer's failure to apprise Clark of his *Miranda* rights and his right to counsel prior to conducting a presentence interview.

3. Whether the sentencing court adequately considered mitigation evidence.

4. Whether the Arizona death penalty statute under which Clark was sentenced to death, Ariz.Rev.Stat. § 13–902, is constitutional.

ANALYSIS

1. Sixth Amendment Right of Confrontation

 Clark argues his sixth amendment right of confrontation was violated when he was not permitted to elicit, on cross-examination, the name and address of the government's John Doe witness. Clark's argument is unpersuasive. Prior to trial, the government disclosed John Doe's true

---

**1.** Clark was sentenced under Ariz.Rev.Stat. § 13–902, which was reenacted as section 13– 703 in 1978.

name and felony record to Clark. The defense had every opportunity to discover material which might be used to impeach Doe's credibility. Although Clark was not provided with John Doe's address, nor was he permitted to elicit this information on cross-examination, these circumstances, contrary to Clark's contention, did not violate his right of confrontation under *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

In *Smith v. Illinois*, the accused did not have an opportunity to discover the true name or address of the principal witness against him. The Court stated:

> [W]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id.* at 131, 88 S.Ct. at 750 (footnote omitted).

In the present case, Clark knew John Doe's true name and his felony record well in advance of trial. This information provided Clark with the "avenues of in-court examination and out-of-court investigation" which the accused was denied in *Smith v. Illinois*. In any event, John Doe did testify at trial that he lived "on a religious retreat" in El Paso. This satisfied the concern expressed by the Supreme Court in *Smith v. Illinois* that an accused be given an opportunity to " 'place the witness in his proper setting.' " *Id.* at 132, 88 S.Ct. at 750 (quoting *Alford v. United States*, 282 U.S. 687, 692–94, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931)).

■ Finally, there is no absolute right of an accused to have a jury hear a witness's true name and address. *Smith v. Illinois* " 'does not establish a rigid rule of disclosure, but rather discusses disclosure against a background of factors weighing conversely, such as personal safety of the witness.' " *United States v. Rangel*, 534 F.2d 147, 148 (9th Cir.), *cert. denied*, 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976) (quoting *United States v. Cosby*, 500 F.2d 405, 407 (9th Cir.1974)). Trial judges have wide latitude to impose reasonable limits on cross-examination based on concerns such as harassment, prejudice, confusion of the issues or the witness's safety. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *see also Smith v. Illinois*, 390 U.S. at 133–34, 88 S.Ct. at 751 (questions tending to endanger personal safety of a witness go beyond proper bounds of cross-examination) (White, J., concurring); *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1376 (9th Cir.1987) (cross-examination properly limited where witnesses revealed true names and occupations but not true addresses and defendant was allowed to obtain their addresses outside presence of jury); *United States v. Washington*, 797 F.2d 1461, 1474 (9th Cir.1986) (right of cross-examination may be restricted if necessary to protect personal safety of witnesses); *Rangel*, 534 F.2d at 148 (witness need not reveal true name, address and phone number where *in camera* evidence convinced judge witness's personal safety would be jeopardized by such disclosure).

In the present case, the trial judge ordered Doe's identity and address concealed from the jury after holding an *in camera* hearing. The court learned in the *in camera* proceeding that Doe was a Drug Enforcement Agency informant, that threats against his life had been made in the city where he lived, and that he still had cases pending in which he would give information. Based upon this information, the trial judge determined Doe's life would be endangered by publicly revealing his true name and address. Under these circumstances, the court did not err in forbidding cross-examination as to Doe's true name and address.

2. Fifth Amendment and Sixth Amendment Claims Arising from Presentence Interview

■ Clark alleges his fifth and sixth amendment rights were violated when the

sentencing judge considered information obtained from him by a probation officer during a presentence interview. Clark asserts his fifth amendment right to be free from self-incrimination was violated because he was never informed either prior to or during the interview that he had the right to remain silent, or that anything he said could be used against him at the sentencing hearing. Clark further contends he was denied his sixth amendment right to counsel because he was never advised that he had a right to have counsel present during the interview.

In his state court review proceedings, Clark raised all of the issues now before this court, except these fifth and sixth amendment claims. Clark attempted to go back to state court to raise these claims by moving in the district court for leave to file a petition seeking additional relief in state court. The district court denied this motion on the ground that such a petition would be futile because it was procedurally barred under Ariz.R.Crim.P. 32.2(a), (c).[2] *See Tacho v. Martinez*, 862 F.2d 1376, 1379–80 (9th Cir.1988) (failure to comply with Rule 32 results in procedural default).

Clark argues that although the Arizona State Supreme Court has said Rule 32.2 bars consideration of previously unraised claims described by the rule, it has never relied solely on Rule 32.2 to reject a previously unraised claim in a capital case. *See, e.g., State v. Carriger*, 143 Ariz. 142, 692 P.2d 991, 997 (1984) ("[T]herefore, although we find Carriger's claims would be barred under state law, we address the merits of his claims that we have not addressed before."); *State v. Tison*, 142 Ariz. 454, 690 P.2d 755, 758 (1984) ("[E]ven if petitioner's claim were not precluded, it would not warrant relief."). The state argues that although the Arizona Supreme Court has given alternative reasons for rejecting previ-

ously unraised claims in death penalty cases, it has unequivocally applied Rule 32.2 to bar such claims. *See Carriger*, 143 Ariz. at 146, 692 P.2d at 995 ("Petitioners must strictly comply with Rule 32 or be denied relief," and "[f]ailure to comply ... will result in a finding that petitioner waived his right to present a Rule 32 petition.").

This debate implicates the question whether Arizona has strictly or regularly followed its Rule 32.2 in rejecting previously unraised claims in capital cases. If Arizona has not "strictly or regularly" followed Rule 32.2 in capital cases, we cannot say the Arizona courts would refuse to hear the claims Clark now wants to raise. *See Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988), (quoting *Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964)); *see also Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982). Accordingly, we would have to treat Clark's fifth and sixth amendment claims as both unexhausted and not procedurally barred by state law. *Cf. Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989).

We need not resolve this debate in this case. If Clark is barred by Rule 32.2 from raising his fifth and sixth amendment claims in Arizona state court, he has failed to show prejudice for his default. If he is not so barred, we will not send him back to state court to raise the claims because they are frivolous.

Clark's fifth and sixth amendment claims are premised on his contention that at the time of his presentence interview, he made statements to the probation officer without counsel and without a *Miranda*-type warning. He argues that these statements

---

2. Rule 32.2 provides in pertinent part:
 a. Preclusion. A petitioner will not be given relief under this rule based upon any ground:
 ....
 (3) Knowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding.
 ....

 c. Inference of Waiver. The court may infer from the petitioner's failure to appeal or to raise an issue on appeal after being advised by the sentencing judge of the necessity that he do so, or his failure to raise any ground then available to him in a previous Rule 32 proceeding in which he was represented by counsel, that he knowingly, voluntarily and intentionally relinquished the right to do so.

formed the basis for the probation officer's observation in the report that Clark lacked remorse for the killings, and that the sentencing court relied upon this information in sentencing Clark to death.[3]

The flaw in Clark's argument is that the record clearly discloses the Arizona sentencing court did not base its conclusion that Clark showed no remorse on the challenged information in the presentence report. To the contrary, in concluding that Clark lacked remorse for the killings, the sentencing court relied on evidence admitted during the trial. That evidence included indisputably admissible testimony that Clark gloated over his killing and kept a macabre souvenir of the event—a bullet, still bearing traces of gore from the victim's wounds. It was from this unchallenged evidence that the prosecutor drew his argument at the sentencing hearing that Clark felt no remorse for his acts, and from which the sentencing judge drew the identical conclusion. The challenged information in the presentence report relative to remorse pales in comparison with the trial evidence heard by the sentencing court.[4]

The only reason we would send Clark back to Arizona to try to present these claims would be to let Arizona, under principles of comity, decide the claims in the first instance. Here, however, the state is resisting Clark's attempt to return to state court, and the claims Clark wants the state to consider are so insubstantial as to be frivolous. Under these circumstances, we will not subject Arizona to the mechanical burden of denying the unexhausted claims,

a senseless task which would simply delay Clark's return to federal court. *See, e.g., Roberts v. LaVallee*, 389 U.S. 40, 43, 88 S.Ct. 194, 196, 19 L.Ed.2d 41 (1967) (per curiam) ("We can conceive of no reason why the State would wish to burden its judicial calendar with a narrow issue the resolution of which is predetermined by established federal principles."); *Rose v. Lundy*, 455 U.S. 509, 525, 102 S.Ct. 1198, 1207, 71 L.Ed.2d 379 (1982) (Blackmun, J., concurring in judgment) ("Remitting a habeas petitioner to state court to exhaust a patently frivolous claim ... hardly demonstrates respect for the state courts. The state judiciary's time and resources are then spent rejecting the obviously meritless unexhausted claim...."); *see also Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977) ("If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system.").

■ The result would be the same were we to treat Clark's fifth and sixth amendment claims as barred by Rule 32.2 and proceed, as did the district court, to a cause and prejudice analysis. *See Murray v. Carrier*, 477 U.S. 478, 494–95, 106 S.Ct. 2639, 2648–49, 91 L.Ed.2d 397 (1986); *Allen v. Risley*, 817 F.2d 68, 69 (9th Cir.1987). Apart from any showing of cause, the district court determined that Clark had not made a showing of prejudice. We agree. Clark has failed to show that the information relative to remorse contained in the

3. The information which Clark challenges appears in the last section of the presentence report under the heading "Summary and Recommendations":

The defendant is a 20 year old caucasian male before the Court after being found guilty by a Jury of Four Counts of First Degree Murder. In conversation, the defendant seemed of above average intelligence. He did not accept any responsibility for the offense, claiming that "John Doe" was the murderer, and forced him (Clark) to accompany him to El Paso. He did not show any outward signs of emotion or remorse for the victims, stating in a monotone, matter-of-fact voice that he was sorry they were gone.
There are some factors in the defendant's early background, such as his broken home environment and limited parental control, which may possibly explain the defendant's involvement in his past criminal activities. However, it does not excuse or explain the Instant Offense. The extreme bizarre behavior as involved in this offense is not the basis for social standards or laws.
The Trial court Judge is most definitely aware of all of the various aspects of this matter. Certain factors clearly militate toward a severe sentence.

4. The statement in the presentence report that Clark refused to accept responsibility for the murders is consistent with the position he took at his trial and has maintained ever since.

presentence report had any effect on the sentencing court's decision to impose the death penalty. Indeed, as we noted above, the record overflows with evidence other than the presentence report—and far more compelling—demonstrating Clark's utter lack of remorse.

### 3. Consideration of Mitigating Factors

■ Clark does not dispute that the sentencing judge conducted a two-day mitigation hearing in which he actively solicited and heard Clark's mitigation evidence, including evidence of Clark's young age at the time of the killings, his character and upbringing. Witnesses at this mitigation hearing included a Catholic priest familiar with Clark's character, two psychiatric experts and Clark's father. The sentencing judge also considered psychiatric evidence submitted by Clark. Clark's challenge to the adequacy of the mitigation hearing is based on his contention that when imposing sentence the sentencing judge did not discuss each mitigating factor that had been presented, identify it by name and explain its effect, if any, on the sentencing decision. Clark argues this denied him due process. We reject this argument.

■ The Supreme Court has held that if a state provides for the death penalty, the sentencer must "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record ... that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (emphasis in original). While *Lockett* requires the sentencer to consider all evidence presented by the defendant in mitigation, it does not speak to the "weight which must be given

to any particular mitigating evidence, or the manner in which it must be considered; [it] simply condemn[s] any procedure in which such evidence has no weight at all." *Barclay v. Florida*, 463 U.S. 939, 961 n. 2, 103 S.Ct. 3418, 3430–31 n. 2, 77 L.Ed.2d 1134 (1983) (Stevens and Powell, J., concurring). The due process clause does not require that the sentencing court exhaustively document its analysis of each mitigating factor as long as a reviewing federal court can discern from the record that the state court did indeed consider all mitigating evidence offered by the defendant.[5] *See, e.g., Parker*, 111 S.Ct. at 736 (statement by the sentencing court that it considered all mitigating evidence adequate).

Here, it is clear from the record that the Arizona sentencing court considered all mitigating evidence, both statutory and non-statutory, before imposing the death sentence. For example, among other things, the sentencing court acknowledged the existence of evidence in mitigation concerning Clark's

poor work history, poor heterosexual relations; a drug history; heavy drinking with acting out; repeated arrests; excessive physical aggression; sexual promiscuity; suicidal attempts; impulsive behavior with rage, blackouts; severe school problems with acting out things, authority figures; vagrancy and residential instability; magnitude of somatic complaints that interfe[rred] with daily function frequently; pathological lying; lack of friends and close associates; lack of guilt about exploits and crimes including lack of insight, correction, lack of insight full corrective capacity; reckless use with early family indulgence in the

5. *Smith v. McCormick*, 914 F.2d 1153 (9th Cir. 1990), relied on by Clark, does not provide controlling authority to the contrary. In *Smith v. McCormick*, neither the trial court nor the Montana Supreme Court made any reference in their findings to character evidence Smith presented in mitigation. *Id.* at 1165. We stated the Montana sentencing court had to discuss explicitly in its written findings all relevant mitigating circumstances, including those found insufficient to justify leniency. *Id.* at 1166. Montana state law required its courts to present

"written findings of fact ... substantiated by the records of the trial and the sentencing proceeding" regarding their conclusions of aggravating and mitigating factors. Mont.Code Ann. § 46–18–306. Arizona has no similar requirement. Moreover, *Parker v. Dugger*, —— U.S. ——, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), decided after *Smith v. McCormick* makes clear that the due process clause does not require the sentencing court to conduct an on-record discussion of each mitigating factor. *Parker*, 111 S.Ct. at 736.

use of guns from age 4; and disintegrated brutalized family life.

Mitigation Hearing at 251 (July 28, 1978). If such a list were not enough, the sentencing court, in response to a question from the prosecutor, explained that it considered the entire panoply of mitigating evidence prior to imposing the death sentence:

> [The Prosecutor]: Your Honor, does the Court specifically find that there was no mitigating circumstances sufficiently substantial to call for leniency?
>
> [The Court]: If I didn't, I say it now that I have observed in the history of this case as it progressed through the Court, in any of the testimony presented to the Court, in the Mitigating Hearings, the Court did not observe any mitigating circumstances as to assist the Court in this matter of sentencing the Defendant in determining that the Court should impose life imprisonment rather than death in this case.

*Id.* at 252.

These statements by the sentencing court, read in light of the record as a whole, reveal that the sentencing court considered all mitigating evidence. The sentencing court's statements satisfy the demands of the due process clause. *See Parker,* 111 S.Ct. at 736 ("We must assume that the trial judge considered all this evidence before passing sentence. For one thing, he said he did.").

**4. Constitutionality of Ariz.Rev.Stat. § 13–902**

■ In his challenge to Arizona's death penalty statute, Clark argues the sentencing court's determination of aggravating circumstances impermissibly infringed upon the jury's factfinding role and violated his rights under the equal protection clause of the fourteenth amendment. The Supreme Court has forcefully rejected a similar challenge in the context of the sixth amendment: " 'Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court.' " *Walton v. Ari-*

*zona,* 497 U.S. 639, 110 S.Ct. 3047, 3054, 111 L.Ed.2d 511 (1990) (quoting *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990)); *see also Richmond v. Lewis,* 921 F.2d 933, 940 (9th Cir.1990). Clark's invocation of the equal protection clause does not change this result. The Constitution does not require that a jury find the aggravating circumstances supporting a death sentence.

■ Clark also contends the "depraved" and "pecuniary gain" aggravating circumstances were not found beyond a reasonable doubt. He bases this contention on the circumstance that neither the sentencing court nor the Arizona Supreme Court explicitly recited that either had found that the aggravating circumstances had been established "beyond a reasonable doubt." We reject this argument. The Arizona Supreme Court independently reviewed all of the evidence of aggravating circumstances and concluded "that the aggravating circumstances described [in its opinion] have been established...." *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, 897 (1980). Thirty-six days before handing down its decision in Clark's case, the Arizona Supreme Court filed its decision in *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (1980). There the court stated:

> We have not previously considered the second prong of defendant's argument, that the death penalty statute is unconstitutional because it does not require the state to prove the existence of aggravating factors beyond a reasonable doubt. A.R.S. § 13–454 B provides that "[t]he burden of establishing the existence of any of the [aggravating] circumstances * * * is on the prosecution." The statute does not indicate the degree of certainty with which these circumstances must be established, but we have always assumed, and we so hold now, that the state must prove the existence of aggravating circumstances beyond a reasonable doubt. Our past cases, moreover, demonstrate that this Court will reduce a death penalty to life imprisonment where the evidence of aggravating factors is inconclusive. *See e.g., State v. Madsen,*

125 Ariz. 346, 609 P.2d 1046 (1980); *State v. Verdugo,* 112 Ariz. 288, 541 P.2d 388 (1975).

*State v. Jordan,* 126 Ariz. at 286, 614 P.2d at 828.

The Arizona Supreme Court having independently reviewed the facts in Clark's case and having concluded that the aggravating circumstances had been "established," it is ludicrous to suggest the court did not find the aggravating circumstances established according to the standard it so recently announced in *Jordan.* The term "established," as used by the Arizona Supreme Court in Clark's case, can have no other plausible meaning.[6]

█ Finally, Clark contends that the Arizona Supreme Court, by its decisions in death penalty cases, has not sufficiently narrowed the definition of "depraved" so as to withstand a constitutional challenge to the vagueness of that term *as it is used* in Arizona's death penalty statute. *Cf. Walton,* 110 S.Ct. at 3057 ("If the Arizona Supreme Court has narrowed the definition of the especially heinous, cruel or depraved aggravating circumstance, we presume that Arizona trial judges are applying the narrower definition. It is irrelevant that the statute itself may not narrow the construction of the factor."). The Supreme Court rejected a similar challenge in *Walton, id.,* as we did in *Richmond,* 921 F.2d at 941–45. We do so again here.

In applying the "depraved" aggravating circumstance to Clark's case, the Arizona Supreme Court made clear that the term "depraved" referred to "the mental state and attitude of the perpetrator as reflected in his words and actions." *Clark,* 616 P.2d at 896; *see also State v. Ceja,* 126 Ariz. 35, 612 P.2d 491, 495 (1980); *State v. Knapp,* 114 Ariz. 531, 562 P.2d 704, 716 (1977); *State v. Blazak,* 114 Ariz. 199, 560 P.2d 54, 61 (1977). The Arizona Supreme Court then recited several discrete facts which supported the finding that Clark committed the murders in a "depraved" manner as

Arizona courts have defined that term. For example, the Arizona Supreme Court stressed that the Thumms "had provided work and home to appellant after he had been released from a juvenile correctional institution." *Clark,* 616 P.2d at 897. Another victim was Clark's friend. Clark killed without "justification or excuse." *Id.* His later comment that "You should have seen Charley when I hit him with those cutters" and his possession of a spent bullet as a relic completes the picture of "depraved" killings.

The Arizona Supreme Court properly exercised its channeled discretion when it independently reviewed the record and found that Clark had acted in a depraved manner in killing his victims. We will not disturb that finding.

## CONCLUSION

We affirm the district court's determination that Clark's sixth amendment right of confrontation was not violated by the state court's refusal to permit Clark to elicit from the government's John Doe witness, on cross-examination, the witness's true name and address. We also affirm the district court's refusal to consider Clark's fifth and sixth amendment claims and its denial of Clark's motion to return to state court to present those claims. We reject Clark's argument that the sentencing court failed properly to consider Clark's mitigating evidence. We hold that the aggravating circumstances on which the sentencing court relied in sentencing Clark to death were properly established. Finally, we reject Clark's challenges to the constitutionality of Arizona's death penalty statute.

AFFIRMED.

---

**6.** Clark also argues federal constitutional law requires that aggravating circumstances for sentencing purposes be established beyond a reasonable doubt. It is unnecessary to decide this question, because as we have concluded, the Arizona Supreme Court found that the aggravating circumstances had been established beyond a reasonable doubt.