Opinion
 

 REARDON, J.
 

 Appellant Luciano Ramirez was convicted of assault with intent to commit rape (count 1), attempted rape (count 2), sexual battery (count 3), and failing to register as a sex offender (count 4). Two prior
 
 *50
 
 felony convictions alleged as strikes (Pen. Code,
 
 [1]
 
 § 1170.12, subd. (c)(2)) and as serious priors (§ 667, subd. (a)) were found true. He was sentenced to life terms on counts 1 and 4, plus 10 years for the serious priors. Sentence on counts 2 and 3 was stayed pursuant to section 654.
 

 Appellant challenges, on constitutional grounds, the validity of section 293.5, a statute that allows under certain circumstances the alleged victim of a sex offense to be identified as “Jane Doe” rather than by her true name. We uphold the validity of section 293.5, reject appellant’s remaining contentions, and affirm.
 

 I. Facts
 

 In June 1995, Jane Doe, a 25-year-old married flight attendant, was a resident of Seattle, but based in San Francisco. She shared a “commuter apartment” with other female flight attendants, including Wanda Craig, in Burlingame’s North Park Apartments.
 

 On the afternoon of June 11, 1995, after having completed a flight that originated in Miami, Jane went to the apartment complex pool. She brought with her four beers and next month’s flight schedule to review. While at the pool, appellant approached her and commenced a conversation. He introduced himself as “Luciano” and explained that he lived in the apartment complex and that his roommate was presently entertaining a girlfriend in his apartment. During the conversation, Jane informed appellant that she was married. As Jane consumed her beer, appellant drank rum and Coke. The conversation lasted a couple of hours, until appellant stated that they would have to leave soon as the pool was about to close.
 

 Jane stated that she would like some rum and Coke, and appellant told her that he knew where to get it. In her car, Jane drove with appellant to a nearby store where rum and Coke were purchased. Following appellant’s directions, Jane drove to a wooded area in Hillsborough where they consumed the rum and Coke. Jane testified that she accompanied appellant because he seemed to be a “nice person . . . .” She admitted to feeling a “slight buzz” as a result of the alcohol consumption. As they conversed, Jane commented that she had not shaved her legs. Appellant then rubbed her leg. When Jane told appellant that she just wanted to be friends, appellant responded: “ ‘Oh that’s fine. I understand.’ ” They then left the area before dark to return to the apartment complex.
 

 Because Jane believed that appellant’s apartment was still occupied, she invited appellant to her apartment. They had another rum and Coke while
 
 *51
 
 watching television. While they were seated on the couch, appellant made an advance. Jane protested, stating “[T]his is not what I want, ... I just want to be friends.” Jane testified that her next realization was appellant “in front of me, tearing my belt off, telling me that this is what he wants.” Because appellant “was very strong,” Jane testified that she “couldn’t get his . . . hands away.” Appellant opened her belt and forcibly removed her shorts and underpants. Jane testified that she “was really scared” and “was kicking at his chest. . . .” Appellant then placed her “over the couch so that my rear end was on the armrest of the couch” with her legs dangling over the end of the couch. Appellant stood between Jane’s legs with his hands on her thighs. She could not tell whether she was penetrated, but because appellant was so close she feared she had been.
 

 At this time, Jane’s roommate, Wanda Craig, approached the apartment room door. She heard “some crying” and a female voice saying “ ‘Oh, no.’ ” When she opened the door, Craig saw a naked man, that she identified as appellant, with “his butt up in the air.” Craig testified that appellant “was sweating and looked madder than hell.” Craig recalled that she was “scared to death the way he looked at me.”
 

 When appellant saw Craig, he got off Jane. Craig could see that Jane was crying and was naked except for her top that was rolled up. Upon seeing Craig, Jane explained: “ ‘Thank God you are here.’ ” Believing that she had witnessed a rape, Craig grabbed the kitchen phone and dialed 911.
 

 Jane took her clothes and entered the bathroom, crying. Appellant quickly dressed and left, telling Craig, “ ‘We have got a thing going.’ ”
 

 When police arrived, Jane appeared to be in shock but not under the influence of alcohol. She gave a detailed statement concerning the assault and her assailant, including his stated first name. The officer observed a bruise on Jane’s thigh. This bruise was also observed during the rape examination conducted at the hospital. The examination failed to disclose the presence of semen. However, seminal material was found on a seat cushion on the couch in Jane’s apartment.
 

 A check of the apartment complex records led police to appellant’s apartment. Knocking on the front door produced no response. After about 10 minutes, a woman, who identified herself as a resident of the apartment, approached the front door. She unlocked and entered the front door. The officers observed appellant wet and wearing a towel. He told police that he had been at home all day, except between noon and 2 p.m. when he took his son for some for ice cream. The clothing that he had been wearing was
 
 *52
 
 produced. Jane identified appellant as her assailant, as well as the clothing worn by him.
 

 Evidence was also introduced, the admissibility of which is not challenged on this appeal, of appellant’s 1983 assault with intent to commit rape on Vicky S., of which he was convicted, and his 1985 rape of his former girlfriend Jane F., which did not result in prosecution because of the victim’s emotional instability.
 

 The evidence also established that appellant had failed to register as a sex offender with the chief of police of Burlingame.
 

 Appellant did not testify nor present any defense evidence.
 

 II. Discussion
 

 A.
 
 Appellant’s Challenge to the Validity of Section 293.5 Lacks Merit
 

 Appellant challenges the validity of section 293.5 on four grounds: (1) that the identification of the victim as “Jane Doe” interfered with counsel’s “ability to make intelligent challenges of the prospective jurors”; (2) that the victim “was less vulnerable to cross-examination” because of her identification as “Jane Doe”; (3) that the victim’s privacy interest does not outweigh the appellant’s right “to have the jury hear the witness’s true name”; and (4) that the instruction mandated by subdivision (b) of section 293.5, that “the alleged victim is being so identified only for the purpose of protecting ... her privacy,” lessens the prosecution’s burden of proof resulting in a denial of due process.
 

 1.
 
 The Statute
 

 Section 293.5 provides in relevant part that: “(a) [T]he court, at the request of the alleged victim, may order the identity of the alleged victim in all records and during all proceedings to be either Jane Doe or John Doe, if the court finds that such an order is reasonably necessary to protect the privacy of the person and will not unduly prejudice the prosecution or the defense. [<¡0 (b) If the court orders the alleged victim to be identified as Jane Doe or John Doe pursuant to subdivision (a) and if there is a jury trial, the court shall instruct the jury, at the beginning and at the end of the trial, that the alleged victim is being so identified only for the purpose of protecting his or her privacy pursuant to this section." (§ 293.5, subds. (a), (b).)
 

 2.
 
 Background
 

 Following a series of United States Supreme Court decisions barring government from punishing publication of truthful information lawfully
 
 *53
 
 obtained, including a rape victim’s identity
 
 (The Florida Star
 
 v.
 
 B. J. F.
 
 (1989) 491 U.S. 524 [109 S.Ct. 2603, 105 L.Ed.2d 443];
 
 Smith
 
 v.
 
 Daily Mail Publishing Co.
 
 (1979) 443 U.S. 97 [99 S.Ct. 2667, 61 L.Ed.2d 399];
 
 Cox Broadcasting Corp.
 
 v.
 
 Cohn
 
 (1975) 420 U.S. 469 [95 S.Ct. 1029, 43 L.Ed.2d 328]), and heeding the high court’s admonition that “[i]f there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information”
 
 (Cox, supra,
 
 at p. 496 [95 S.Ct. at p. 1047]), our Legislature, in 1992, unanimously passed Senate Bill No. 296, which added section 293.5 (Stats. 1992, ch. 502, § 2) (see also § 293, also part of Sen. Bill No. 296, prohibiting disclosure of name of sex offense victim by law enforcement in certain circumstances). The section is intended to protect the privacy of victims of sex offenses, to encourage such victims to report the offenses so that rapists may be apprehended and prosecuted, and to protect these victims from harassment, threats, or physical harm by their assailants and others. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 296 (1991-1992 Reg. Sess.) June 23, 1992; see
 
 The Florida Star
 
 v.
 
 B. J. F., supra,
 
 491 U.S. at p. 537 [109 S.Ct. at p. 2611].)
 

 There can be little dispute that the state’s interest in protecting the privacy of sex offense victims is extremely strong and fully justified. “No crime is more horribly invasive or more brutally intimate than rape.” (Marcus & McMahon,
 
 Limiting Disclosure of Rape Victims’ Identities
 
 (1991) 64 So.Cal.L.Rev. 1020, 1030.) Justice White described the crime as the “ultimate violation of self,” short of homicide.
 
 (The Florida Star
 
 v.
 
 B. J. F., supra,
 
 491 U.S. at p. 542 [109 S.Ct. at p. 2614] (dis. opn. of White, J.).) The effects of rape, however, do not end with the crime itself. “At the same time a victim is suffering from the severe emotional and physical traumas brought on by the rape, she is also being scrutinized and judged by her community. There is no other crime in which the victim risks being blamed and in so insidious a way . . . .” (Marcus & McMahon,
 
 supra,
 
 at p. 1030.)
 

 In addition to the protection of the victim’s privacy, the state has a strong interest in ensuring that sex offenses are duly and promptly reported. If has been stated that “rape remains the most underreported crime within the criminal justice system” (Marcus & McMahon,
 
 Limiting Disclosure of Rape Victims’ Identities, supra,
 
 64 So.Cal.L.Rev. at pp. 1049-1050, fn. omitted), and studies indicate “that rape victims allege they would be far more willing and likely to come forward, report the crime, and assist the authorities as necessary, if statutorily enforced anonymity were available or dependable” ■ (Berlin,
 
 Revealing the Constitutional Infirmities of the “Crime Victims Protection Act,’’ Florida’s New Privacy Statute for Sexual Assault Victims
 
 (1995) 23 Fla. St. U. L.Rev. 513, 520).
 

 
 *54
 
 Finally, with respect to the need to protect the victim from harassment, threats, or physical harm from her assailant or others, one need only look to the facts of
 
 The Florida Star
 
 v.
 
 B. J. F., supra,
 
 491 U.S. at page 528 [109 S.Ct. at page 2606], where the victim’s mother, after disclosure of the victim’s name, received “several threatening phone calls from a man who stated that he would rape B. J. F. again” and that as a result of these threats the victim was required “to change her phone number and residence, to seek police protection, and to obtain mental health counseling.”
 
 (Ibid.)
 

 3.
 
 Standard of Review
 

 It is well settled that all “presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.]”
 
 (Lockheed Aircraft Corp.
 
 v.
 
 Superior Court
 
 (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701]; see
 
 Voters for Responsible Retirement
 
 v.
 
 Board of Supervisors
 
 (1994) 8 Cal.4th 765, 780 [35 Cal.Rptr.2d 814, 884 P.2d 645];
 
 Calfarm Ins. Co.
 
 v.
 
 Deukmejian
 
 (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247].) It is equally well settled that the person attacking the statute bears the burden of demonstrating its invalidity
 
 (Centex Real Estate Corp.
 
 v.
 
 City of Vallejo
 
 (1993) 19 Cal.App.4th 1358, 1362 [24 Cal.Rptr.2d 48]) and that “[o]ne who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation”
 
 (People
 
 v.
 
 Black
 
 (1941) 45 Cal.App.2d 87, 96 [113 P.2d 746]; see
 
 People
 
 v.
 
 Leung
 
 (1992) 5 Cal.App.4th 482, 490, fn. 2 [7 Cal.Rptr.2d 290]).
 

 4.
 
 Jury Selection
 

 In giving the names of witnesses to the prospective jurors, the court identified the victim as “Jane Doe,” explaining that “Miss Doe is so identified only for the purposes of protecting her rights to privacy under the Penal Code, Section 293.5.” Because her true name was not given, prospective jurors, appellant contends, could not comply with the court’s directive “if you know any of those individuals, please let us know . . . .” The fact that the victim testified in person at trial and was seen by the sworn jurors, none of whom notified the court or counsel that he or she recognized the victim, does not deter appellant. He argues that a juror may have known the victim by name but not in person and that he was entitled to explore the nature and scope of that assumed knowledge. In nonlegal jargon, we think this is a stretch.
 

 In order to establish prejudice on the basis that the statute, as applied, prevented the examination of prospective jurors concerning knowledge of
 
 *55
 
 the victim, appellant would have to show, at a minimum, that some juror who actually served on the jury returning the verdict had such knowledge. (Cf.
 
 People
 
 v.
 
 Ashmus
 
 (1991) 54 Cal.3d 932, 966 [2 Cal.Rptr.2d 112, 820 P.2d 214].) This he has not done. Secondly, even if appellant were only required to establish the possibility of such an occurrence, his speculation in this regard is not supported by reality. Short of the status of celebrity or public figure, which is not an issue here, knowledge about an individual is generally acquired through some form of personal contact. Given the trial court’s admonition, it is unreasonable to conclude that a juror, recognizing the victim in court, would suppress that information and not inform the court. Even if we were to indulge appellant in his claim that a juror may have known the victim only by name, we fail to see where this argument leads. If the juror only knows the victim by name and is not given the name, there is no way that the juror could relate, whatever information he or she had, to this victim. In short, if the sole source of identification is the true name of the victim and that name is never provided, the juror would not know the victim and would view the testimony of the victim like any other unknown witness in the case.
 

 Finally, the jury was specifically instructed to decide the case based on “the evidence received in the trial and not from any other source.” (CALJIC No. 1.00.) In the complete absence of any evidence to the contrary, we must presume that the jury followed this instruction.
 

 In sum, appellant has failed to demonstrate that the identification of the victim as “Jane Doe” resulted in the denial of his right to a fair and impartial jury.
 

 5.
 
 Confrontation
 

 Appellant next contends that allowing the victim to testify as “Jane Doe,” as authorized by section 293.5, violated his right to confront and cross-examine the witness. He relies primarily on
 
 Smith
 
 v.
 
 Illinois
 
 (1968) 390 U.S. 129 [88 S.Ct. 748, 19 L.Ed.2d 956], a case where the accused was prevented from learning the true name and address of the principal witness against him. Appellant candidly concedes that here, unlike the situation in
 
 Smith,
 
 the defense was provided with complete discovery, including the true name and address of the victim. This is a significant distinction that does make a difference.
 

 In terms of confrontation and cross-examination, the only limitation imposed on appellant was to prevent reference to the victim by her true name in front of the jury. Such a limitation has been specifically upheld against a
 
 *56
 
 similar challenge where, as here, the defense was provided with the true name of the witness. (See
 
 Clark
 
 v.
 
 Ricketts
 
 (9th Cir. 1991) 958 F.2d 851.) In distinguishing
 
 Smith
 
 v.
 
 Illinois, supra,
 
 390 U.S. 129, the court in
 
 Clark
 
 stated, “[T]here is no absolute right of an accused to have a jury hear a witness’s true name . . . .”
 
 (Clark
 
 v.
 
 Ricketts, supra,
 
 at p. 855; see also
 
 United States
 
 v.
 
 Rangel
 
 (9th Cir. 1976) 534 F.2d 147, 148.) We agree with the rule and rationale of
 
 Clark
 
 and also reject the challenge herein.
 

 Alternatively, appellant argues that if preventing disclosure of the victim’s name to the jury may be justified in some situations, no justification can be found where the interest to be protected is merely “the privacy” of the victim of a sex offense. We reject this contention for a number of reasons.
 

 “Privacy” is not an insignificant interest—it is described in our state Constitution as one of our “inalienable rights.” (Cal. Const., art. I, § 1.) In the context of the victim of a sex offense, our Legislature, through the enactment of section 293.5, has likewise determined that the privacy interest of such a victim is significant. Appellant does not quarrel with this premise nor with the conclusion that many victims are reluctant to report sex offenses “because of fear they will be publicly identified and humiliated." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 296 (1991-1992 Reg. Sess.) June 16, 1992, p. 1.) Appellant does not dispute the purpose of the legislation, heretofore discussed, nor does he challenge the statute’s probable success in accomplishing the stated purpose. He argues, solely, that the state’s interest in encouraging the reporting of sex offenses and the prosecution of sex offenders is insufficient to outweigh his right to confront the victim by name in court.
 

 The right of the accused to confront and cross-examine the accuser is an express constitutional right. (U.S. Const., Amend. VI;
 
 Pointer
 
 v.
 
 Texas
 
 (1965) 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923].) “However, even a criminal defendant’s express constitutional right to cross-examination and confrontation is not absolute.”
 
 (In re Elizabeth T.
 
 (1992) 9 Cal.App.4th 636, 640 [12 Cal.Rptr.2d 10].) As stated by our high court in
 
 Maryland
 
 v.
 
 Craig
 
 (1990) 497 U.S. 836 [110 S.Ct. 3157, 111 L.Ed.2d 666]: “‘Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.’ ”
 
 (Id.
 
 at p. 849 [110 S.Ct. at p. 3165] [compelling state interest in protecting child victims of sex crimes from further trauma may outweigh right to confrontation], quoting
 
 Chambers
 
 v.
 
 Mississippi
 
 (1973) 410 U.S. 284, 285 [93 S.Ct. 1038, 1041, 35 L.Ed.2d 297].) What constitutes an appropriate case requires a balancing of the state’s interest on the one hand and the nature of the defendant’s right and degree of limitation on the other.
 
 *57
 

 (Davis
 
 v.
 
 Alaska
 
 (1974) 415 U.S. 308, 319-320 [94 S.Ct. 1105, 39 L.Ed.2d 347];
 
 Clark
 
 v.
 
 Ricketts, supra,
 
 958 F.2d at pp. 854-855;
 
 Montez
 
 v.
 
 Superior Court
 
 (1992) 5 Cal.App.4th 763, 771 [7 Cal.Rptr.2d 76].)
 

 The statute under attack specifically provides for such a balancing test by requiring that identification of the victim as “Jane Doe” only take place “if the court finds that such an order is reasonably necessary to protect the privacy of the person and will not unduly prejudice the prosecution or the defense.” (§ 293.5, subd. (a).) The record reflects that the trial court conducted the required balancing test. After ascertaining that the victim had made a proper request under section 293.5 and that the only claim of prejudice asserted by appellant was that the victim might “expand or embellish her testimony” if allowed to testify as “Jane Doe,” the court ruled as follows:
 

 “Okay. Well, the Court believes that the signed document that Mr. Lynch [prosecutor] referred to encompasses an appropriate request by the alleged victim, and the argument that she might embellish her testimony is speculative. There hasn’t been an assertion of undue prejudice, and certainly since her name was provided to the defense to do a background investigation and to check for any impeachment priors and such, I don’t see that there is any undue prejudice.
 

 “So the Court will grant the request to keep her identity private as an alleged victim of a sensitive type of crime.
 

 “The Court finds that this order is reasonably necessary to protect her personal privacy. And the Court will then, consistent with 290.3—I am sorry—293.5, subsection (b) inform the jury at the beginning and end of the trial that the victim is identified only for the purpose of protecting her privacy as Jane Doe, pursuant to that penal code section.”
 

 Providing for a balancing test that weighs the privacy interest of the victim of a sex offense and the resulting state interest in facilitating the reporting of sex offenses against the minimal intrusion on an accused’s nonabsolute right of confrontation is not, in our view, constitutionally infirm, nor did its application in the instant case violate appellant’s confrontation and cross-examination rights.
 

 6.
 
 Statutorily Mandated Instruction
 

 Finally, appellant challenges the portion of the statute that requires the trial judge to instruct the jury “that the alleged victim is being so
 
 *58
 
 identified [as Jane Doe or John Doe] only for the purpose of protecting his or her privacy pursuant to this section.” (§ 293.5, subd. (b).) The jury was so instructed in this case. Appellant contends that the instruction creates the inference that the trial court believes the “alleged victim is an actual victim,” thereby lightening the prosecution’s burden of proof resulting in a denial of due process. He suggests that the jury should have been cautioned against drawing any inference concerning appellant’s guilt from the use of a fictitious name by the alleged victim. We reject this contention.
 

 It should first be observed that the instruction does not constitute a misstatement of the facts or the law. In such a situation, if appellant desired additional or special instructions of a cautionary nature, he should have made the request. He did not do so. As stated in
 
 People
 
 v.
 
 Lang
 
 (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627]: “A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citation.]” (See also
 
 People
 
 v.
 
 Hill
 
 (1992) 3 Cal.4th 959, 997 [13 Cal.Rptr.2d 475, 839 P.2d 984].) Here, appellant complains that the instruction may have created the inference that the alleged victim was more believable; yet, he took no action in terms of proposed cautionary or clarifying language to protect against such an alleged inference.
 

 In any event, a review of the instructions actually given undermines appellant’s speculative contention. “It is well established that the [challenged] instruction ‘may not be judged in artificial isolation,’ but must be considered in the context of the instructions as a whole and the trial record.”
 
 (Estelle
 
 v.
 
 McGuire
 
 (1991) 502 U.S. 62, 72 [112 S.Ct. 475, 482, 116 L.Ed.2d 385].) Here, the jury was instructed that it “must determine the facts from the evidence received in the trial and not from any other source.” Jurors were told that they were “the sole judges of the believability of a witness” and were given factors to consider in resolving credibility. None of these factors concerned a witness testifying under a fictitious name. Finally, the trial court specifically instructed the jury as follows:
 

 “I have not intended by anything I have said or done or by any questions that I may have asked or by any ruling that I may have made to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness.
 

 “If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusion.
 

 
 *59
 
 “Do not conclude that because an instruction has been given that I am expressing an opinion as to the facts.”
 

 Because it “must be presumed that the jurors followed the instructions of the trial court,”
 
 (People
 
 v.
 
 Beach
 
 (1983) 147 Cal.App.3d 612, 624 [195 Cal.Rptr. 381]) we must conclude, based on the instructions as a whole, that no improper inference could be drawn from the trial court’s explanation of the use of the name “Jane Doe” by the “alleged victim.” (§ 293.5, subd. (b).)
 
 [2]
 

 B.
 
 Remaining
 

 *
 

 Judgment affirmed.
 

 Poché, Acting P. J., and Hanlon, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied August 27, 1997. Mosk, J., was of the opinion that the petition should be granted.
 

 [1]
 

 All future section references are to the Penal Code unless otherwise stated.
 

 [2]
 

 Indeed, the use of a support person to accompany the complaining witness to the witness stand under section 868.5 presents a more extreme situation than the giving of the instruction at issue here. Nonetheless, section 868.5 has been upheld against a similar attack. (See
 
 People
 
 v.
 
 Adams
 
 (1993) 19 Cal.App.4th 412, 437 [23 Cal.Rptr.2d 512]; see also
 
 People
 
 v.
 
 Patten
 
 (1992) 9 Cal.App.4th 1718, 1725-1726 [12 Cal.Rptr.2d 284].)
 

 *
 

 See footnote,
 
 ante,
 
 page 47.