Filed 12/16/14  P. v. Felix CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B251899 |
| Plaintiff and Respondent, | (Super. Ct. No. VA123322) (Los Angeles County) |
| v. | |
| FRANK JAVIER FELIX, | |
| Defendant and Appellant. | |

An information charged appellant Frank Felix with sexual battery (Pen. Code, § 243.4, subd. (e)(1))[1] and continuous sexual abuse of a child (§ 288.5, subd. (a)).[2] The first jury deadlocked on both counts, and the trial court declared a mistrial. Following a second jury trial, appellant was convicted of continuous sexual abuse of a child and acquitted of sexual battery.

Appellant was sentenced to state prison for a term of six years.  The trial court suspended execution of sentence and placed appellant on formal probation for five years with terms and conditions including that he serve 180 days in county jail.  The court imposed a $280 restitution fine (§ 1202.4, subd. (b)), a $40 court security fee

---

[1] All statutory references are to the Penal Code unless otherwise stated.
[2] Two counts of lewd act upon a child were deleted by interlineation and dismissed by the trial court in the furtherance of justice.  (§ 1385.)

(§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373). Appellant was awarded nine days of presentence custody credit.

Appellant contends that he was denied due process of law and a fair trial when, in instructing the jury, the trial court identified the alleged victims as Gisselle V. and Maria R. He contends that singling them out in this way suggested that he was guilty and that trial counsel provided ineffective assistance by failing to object. He also contends that the trial court erred in denying his motion for mistrial based on the jury's hearing evidence that the trial court had excluded. We affirm.

FACTS

*Prosecution Evidence*

Gisselle was friends with appellant's daughter, J., from the third through fifth grades. Starting in the fourth grade, when Gisselle was nine years old, she would go over to J.'s house to play or swim in the pool. Appellant would drive her back home. Sometimes J. would ride with them, but more often appellant and Gisselle would be alone.

One day when Gisselle was in the fourth grade, appellant drove her home by himself. He told her to sit in the front seat, which she did not always do. When they stopped at a stoplight, appellant reached over, put his hand through the side of her shirt, and squeezed her breast. Gisselle was scared and tried to move away. Appellant asked her if she wanted him to stop, and she said yes. Appellant withdrew his hand and drove her home.

Over the next year, appellant touched Gisselle approximately 10 more times on her breast and on her vaginal area over her clothes. He would do this whenever he drove her home and J. was not there. Appellant would also touch Gisselle in the same places when she and J. went swimming. Once, while he was driving her home, he grabbed hold of Gisselle's hand and forcibly tried to place it on his penis, but she pulled away before her hand made contact. When Gisselle had dinner at J.'s house, appellant would rub her leg with his leg underneath the table. Gisselle stopped going to J.'s house at the end of the fifth grade because she "got tired of it" and wanted the touching to stop.

2

Gisselle's mother testified that she would sometimes go outside when Gisselle was being dropped off by appellant or his wife, Lucy. When appellant was driving, J. was almost always in the car. On two or three occasions, appellant and Gisselle were alone in the car.

### Defense Evidence

Appellant's daughter K. testified that she used to see Gisselle at their house with J. about twice a week. K. saw appellant in the pool with Gisselle and J. only once or twice. Gisselle would often tell K. that she wished appellant were her dad. K. never saw appellant behave inappropriately with Gisselle.

As far as K. knew, appellant never drove Gisselle home alone. Whenever either appellant or Lucy drove her home, somebody always went along with them. Gisselle's house had two doors, so someone would go up to the first door with Gisselle to make sure she could get in through the second.

J. testified that she was always in the car with appellant or Lucy when they drove Gisselle home. She never saw appellant reach over and try to touch Gisselle.

According to J., she and Gisselle went in the pool about 10 times or more. Her father joined them only "a few times" and usually did not interact with them. When he did, he would launch them across the pool or flip them. When appellant was not in the pool with them, Gisselle would get out of the pool and yell, "Frank, Frank, come in the pool and play." J. observed that Gisselle would hug appellant and treat him as if he were her own father. This made J. feel jealous.

Hazel Gallego was appellant's son's girlfriend from 2007 to 2009. She never saw Gisselle interact or swim in the pool with appellant. She saw appellant take Gisselle home once or twice. J. went with them each time.

## DISCUSSION

### Jury Instruction

Pursuant to CALJIC No. 1.12, the trial court instructed the jury that "[i]n this proceeding the alleged victims have been identified as Gisselle V. and Maria R. This

3

has been done only for the purpose of protecting each of their privacy rights pursuant to California law."  Appellant contends that the court erred by delivering this instruction because nothing in the record established that either Gisselle or Maria asked the court to keep their last names private and the instruction implied that the court believed they were victims.[3]  Appellant further contends that the trial court erred by redacting the alleged victims' last names without first determining whether the reasonable necessity of doing so outweighed the prejudice to him.  Lastly, appellant claims that his trial counsel provided ineffective assistance by failing to raise this issue.

Appellant's constitutional argument fails.  The delivery of CALJIC No. 1.12 without cautioning the jury "against drawing any inference concerning appellant's guilt from the use of a [redacted] name by the alleged victim" does not violate due process.  (*People v. Ramirez* (1997) 55 Cal.App.4th 47, 57-59.)

Appellant's statutory argument does not affect his substantial rights and is forfeited.  (§ 1259.)  Regardless, it lacks merit.  Section 293.5, subdivision (a), allows a court to protect the identity of alleged sex crime victims if it "finds that such an order is reasonably necessary to protect the privacy of the person and will not unduly prejudice the prosecution or the defense."  This section, however, applies only when the alleged victim is identified as "either Jane Doe or John Doe."  (*Ibid.*)  No special finding is necessary to *redact* an alleged victim's name.  (See, e.g., *People v. Cavallaro* (2009) 178 Cal.App.4th 103, 106, fn. 3 ["Because the record does not reflect a specific order permitting the victims to be referred to as Jane Does (see § 293.5), we will use their abbreviated forenames"].)  Because trial counsel's failure to raise an unmeritorious issue did not prejudice him, appellant's ineffective assistance claim also fails.  (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)

---

[3] Respondent argues that this claim is forfeited because appellant failed to object to the redaction of the victims' last names and the related jury instruction.  When a criminal defendant fails to object to a jury instruction or other action taken by the trial court, we may review it only if it affected his substantial rights.  (§ 1259.)  If appellant is correct (he is not), then CALJIC No. 1.12 affected his substantial rights by lowering the prosecution's burden of proof.  Therefore, his constitutional argument is not forfeited.  (See *People v. Boyce* (2014) 59 Cal.4th 672, 691, fn. 12.)

Appellant contends that the trial court erred by denying his motion for a mistrial.  We review the trial court's ruling for abuse of discretion.  (*People v. Montes* (2014) 58 Cal.4th 809, 884.)

Prior to trial, appellant moved to exclude evidence of a letter written by Lucy and addressed to him that Maria, their former housekeeper and the alleged sexual battery victim, found in their house.[4]  Although the record does not contain a copy of the letter, appellant's motion described its contents:  "Lucy relates that [appellant] has broken her heart again and relates a number of events wherein [he] was at a minimum unfaithful during the marriage and alludes to allegations or suspicions regarding other women and 'Gisselle.'"  She concludes by relating to him "how sad to have such a horney [*sic*] husband."

The trial court tentatively excluded any mention of the letter, but informed the parties that its ruling was "subject to change" if the letter became relevant during a witness's testimony.  The prosecution indicated that it would instruct its witnesses accordingly.

During Maria's examination, she gave three answers that are at issue here.  In the first instance, Maria was testifying about how she confronted Lucy about the incident where appellant allegedly groped her:

"Q　　　　　And did you tell [Lucy] what had happened?

"A　　　　　Yes, all of it.

"Q　　　　　And was anything done in response to that happening?

"A　　　　　Yes.

"Q　　　　　What happened?

"A　　　　　The lady told me that—

---

[4] Maria claimed that she found the letter in the trash after Lucy directed her to check for anything there that may have been important.  Lucy claimed that the letter was taken from her purse without her permission.

"[Defense:]      Objection, your Honor.

"The Witness:    —she understood me, and it wasn't the first time.

"[Defense:]      It's nonresponsive.  He asked about what happened and she's relating out of court statements.  It's nonresponsive and I'd ask it be stricken.

"[Prosecution:]  I'll ask another question, your Honor.  I believe it was nonresponsive."

The prosecution resumed its questioning, and the court never ruled on the objection.

In the second instance, Maria was testifying about reporting to the police what appellant allegedly did to her:

"Q            Okay.  And did you, in fact, attempt to report what had happened to police?

"A            Yes.

"Q            What did you do?

"A            I went to the Huntington Park Police Station.

"Q            What did you do there?

"A            I told them what had happened.

"Q            Do you remember who you spoke to?

"A            I think it was Rendon, the officer.

"Q            Okay.  So you told Officer Rendon what had happened?

"A            Yes, and I showed them the letter where Ms. Lucy said that there are—

"[Defense:]      Objection, your Honor.

"The Court:      All right.  Stricken."

The prosecution then continued to question Maria about her attempts to report what appellant allegedly did to her.

6

The third instance occurred during cross-examination. Defense counsel asked Maria if she was crying on the day she filed the police report. Through the interpreter, she answered yes, but then continued to make statements that were not translated into English:

> "[Prosecution:] There's no question, your Honor.
>
> "The Court: All right. There's no question pending.
>
> "[Defense:] I should note, your Honor, that the witness continues to speak in Spanish; there are Spanish speaking jurors.
>
> "The Court: It's all stricken, you understand that, ladies and gentlemen?"

After Maria was excused, defense counsel moved for a mistrial based on her mention of Lucy's letter. The trial court noted that it had already instructed the jurors to disregard anything stricken from the record. It then denied the motion.

The trial court did not abuse its discretion. In the first and third of Maria's answers that appellant cites as prejudicial, she did not even mention Lucy's letter. In the first, Maria testified that Lucy *told* her, in essence, that appellant had victimized others. In the third, Maria made comments in Spanish that were not translated into English. We can only speculate as to their content. Maria did mention the letter in the second answer at issue, but she was cut off before she could describe its content.

That there were Spanish-speaking jurors who may have heard her begin to describe the letter's contents before she was cut off is also speculative. Even if true, it was harmless. The court instructed the jury to disregard stricken testimony and that "when a witness testifies through a certified court interpreter you must accept the English interpretation of that testimony even if you would have translated the foreign language differently." Jurors are presumed to understand and follow the court's instructions. (*People v. Shazier* (2014) 60 Cal.4th 109, 150-151.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

Robert J. Higa, Judge

Superior Court County of Los Angeles

---

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Mark E. Weber, Deputy Attorney General, for Plaintiff and Respondent.